Antoine Truxillo et al. *v.* Manuel Truxillo.*

A judgment homologating an administrator's account and discharging the administrator, rendered upon publications made pursuant to Art. 1172 of the C. C., is not *res judicata* as to the heirs. The form of notice prescribed by that Article is meant merely for creditors. The heirs should have been cited.

Plaintiffs, heirs of A., in an action against his administrator to recover their share of the succession, in their petition, declare their heirship to be derived through their ancestor B., a predeceased brother of A.; and, in the same connection style themselves *"heirs"* of B. *Held:* That under Art. 982 of the C. C. this was equivalent to an express acceptance of the succession of B., though that succession was not the subject matter of the litigation.

Representation is a legal fiction, the effect of which is to put the representative in the place, degree and rights of the party represented. It is true, a person may represent one whose succession he has renounced; but that is not the case of plaintiffs, *who declare, in their petition, that they are the heirs of the party whom they represent.*

A petition is a judicial proceeding in the sense of Article 982 of the Code.

Plaintiffs claim nothing in the succession of B. They refer to him merely to show, that through him, they are entitled to inherit from his brother A. It is with respect to the succession of the latter only that they assume the quality of heir, in the manner intended by Art. 982 C. C. Spofford, J., with whom concurred Lea, J., dissenting.

This article was taken from Art. 778 of the Code Napoleon, the commentators upon which generally recognize the distinction upon which this case should turn, a distinction pointedly made in *Anderson* v. *Cox,* 6 An. 13. Spofford, J., with whom concurred Lea, J., dissenting.

APPEAL from the District Court, Fifth District, Parish of Assumption, *Cole, J. C. A. Johnson,* for plaintiffs. *Mailhot & Mills,* for defendant and appellant.

Buchanan, J. This is a suit by heirs against an administrator for an account.

The defendant pleads that he filed an account of administration as far back as 1847, which was notified in the manner required by law, and after the legal delays was homologated, and the administrator discharged from his trust by the judgment of court: which judgment he pleads as *res judicata.*

He pleads further that a large portion of the assets placed upon the inventory of this estate, consisted of notes of the administrator himself, which are more than five years past due and are now extinguished by prescription.

Further, that the ancestor of plaintiffs, by representation of whom they claim as heirs of the deceased, was indebted to said deceased by judgment in the sum of $769, with interest; which judgment constituted an item in the inventory, and is due by plaintiffs to the estate.

Defendant annexes to his answer an estimate of moneys received and disbursed by him as administrator, to serve as an account of administration in case the court should be of opinion that he was bound to render another account.

The record shows that *Joseph Truxillo* died on the 19th September, 1846, intestate. The defendant obtained letters of administration. The inventory amounted to $2,569, composed principally of three notes, due by the administrator himself, and of a judgment obtained many years previously by the

---

* The judgment originally pronounced in this case was rendered Feb. 12, 1855; present Slidell, C. J., Voorhies, Buchanan, Ogden, and Spofford, JJ. A re-hearing was granted by the Court as thus organized. Pending the re-hearing, Slidell, C. J., and Ogden, J., resigned their seats on the bench, and their places were supplied by Merrick, C. J., and Lea, J.

deceased against his brother, *Juan Truxillo*, who died before *Joseph*, and by representation of whom the plaintiffs claim as heirs for one third of the estate of *Joseph Truxillo*. On the 5th May, 1847, defendant filed his account of administration, in which he charged himself with everything in the inventory, except the judgment against *Juan Truxillo*, and credited himself with funeral expenses, costs of court, and commissions. He also claimed to be a creditor of deceased for thirteen years boarding, at $10 per month. There was a balance, according to this account, in favor of the administrator, of $24 89-100.

The account was published by posting notices at the court house door (there being no newspaper published in the parish,) during ten days, and, no opposition being made, was homologated, and judgment entered, discharging the defendant as administrator.

There is no doubt that this judgment of homologation is not *res judicata* against the heirs. The form of notice pursued was in accordance with Article 1172 of the Code, which has reference merely to creditors.

The defendant invokes Article 1057, which mentions legatees in connection with creditors, and argues from thence, that heirs are synonimous with legatees, and that the law contemplates the same kind of notice to both. The argument is fallacious. There was, in this case, no will, and consequently no legatee. To bind the heirs, under the circumstances disclosed by this case, they should have been cited. The evidence shows that they were all residents of the parish. See *Millaudon* v. *Cajus*, 6 L. R., 222; *Baldwin* v. *Carleton*, 11 Rob.

The only serious question in this case, in our opinion, is the right of the defendant to offset the judgment against *Juan Truxillo*, to the share of plaintiffs in the inheritance of *Joseph Truxillo*. The counsel of plaintiff contends that the former having died before the latter, was never the heir of the latter, but that plaintiffs have inherited directly from their uncle. The plaintiffs came to the succession of their uncle concurrently with an aunt and several cousins, by representation of their father, *Juan Truxillo*, the judgment debtor of their uncle. Representation is a legal fiction, the effect of which is to put the representative in the place, degree and rights of the party represented. It is true, a person may represent one whose succession he has renounced; but that is not the case of plaintiffs, who declare in their petition that they are *the sole heirs of Juan Truxillo*. The case of *Destrehan* v. *Destrehan*, 4th N. S., is not analogous to the present case. The claimants in that case, had not only renounced the succession of the party whom they represented, but their relationship to the deceased was in the direct descending line, and the decision turned entirely upon peculiar provisions of the Code applicable to that relationship alone, in connection with the subject of collation.

We are of opinion that the administrator has the right to oppose the judgment against *Juan Truxillo* to the claim of plaintiffs in the inheritance of *Joseph Truxillo*. That judgment was for $769, and bore 5 per cent. interest from October, 1853. At the time of the death of *Joseph*, it amounted, including 23 years interest, to ............................................. $1,653

The plaintiffs, being heirs of *Joseph*, for one-third, the judgment was extinguished at the death of *Joseph*, to the extent of one-third, by confusion, say ..................................................... 551

Balance due on judgment....................... $1,102

TRUXILLO
.v.
TRUXILLO.

The amount of *Joseph's* inventory was, as we have seen............ $2,569

Add 23 years interest on the judgment against *Juan Truxillo*, of which

    the capital ($769) is inventoried............................ 884

Gross amount of *Joseph Truxillo's* estate........................ $3,453

Deduct charges included in the account of administration rendered by

    defendant in 1847, which are admitted by plaintiffs to be correct.... 273

Nett amount to be divided among the heirs........................ $3,180

Of which one-third belongs to plaintiffs, say..................... 1,060

The plaintiffs had nothing to claim in the estate of their uncle, as the evidence shows. There is, therefore, no reason for charging the defendant with the expense of this suit.

The judgment of the District Court is reversed; and the judgment of this court is in favor of defendant, with costs in both courts.

*C. A. Johnson*, for plaintiff, applied for a re-hearing:

The conclusions of the court, if we have rightly understood them, amount substantially to finding that plaintiffs have made themselves the heirs, pure and simple of *Juan Truxillo*. The evidence to sustain them is the declaration made in our petition, that we were the sole heirs of *Juan Truxillo*. The part of the petition in which this declaration occurs, is here copied in full.

"That your petitioners are entitled each to one-sixth of the said estate for this—viz: That the said *José* left no heirs of his body, and that his legal heirs were his sister, *Marcellina Truxillo*, widow of *Domingo Acosta*, of the parish of Assumption, for one-third; and the children and representatives of the late *Antoine Truxillo*, brother of the deceased, for one-third; and the children and representatives of the late *Juan Truxillo*, also a brother of the decased, for the remaining third; that the representatives of said *Juan Truxillo* are your petitioners, *Antoine*, son of said *Juan* and your petitioner, the widow *Domingo Truxillo*—the said *Domingo* being, together with said *Antoine*, your petitioner, the only children and sole heirs of said *Juan*, deceased; and the said *Domingo* having died intestate, leaving for his sole heirs his children, *Philogene* and *Jean Baptiste*, sole issue of the marriage of said *Domingo* with your petitioner, his widow; and the said *Philogene* and *Jean Baptiste* having since died intestate and without heirs of their body, whereby your petitioner, their mother, became their sole heir, and is sole entitled to their rights."

We say the conclusions of the Court are based upon the finding that the plaintiffs have made themselves the unconditional heirs of *Juan Truxillo*, inasmuch as the judgment has, by giving effect to the offset pleaded, applied our funds to the payment of the debt of *Juan*. No other theory of the case adjudged by the court, is admissible. It cannot, for instance, be maintained that the debt of *Juan* has been extinguished by funds belonging to his estate, for *Juan* died before *José*, and this share in the estate of the latter, which has been applied by the court to the extinguishment of *Juan's* debt, thus never made a part of *Juan's* estate. In other words, our funds, derived from a source foreign to the estate of *Juan*, have been made use of to pay the debt of *Juan*. To our minds, this is nothing more or less than a condemnation of the plaintiffs as unconditional heirs of *Juan*; and the warrant to this judgment is the language used by us in the extract from our petition above given, which the court seems to consider as an express acceptance of the succession of *Juan*.

I. The first question which we submit then is, whether the court have not given to the declaration referred to, a meaning and effect which do not belong to it. Though the opinion of the court does not cite any law applicable to the above state of facts, it is plain that its conclusion, if legitimate, must rest upon Art. 982 of the Code, which is in these words:

"C. C. 982. The simple acceptance may be either express or tacit. It is

express when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding."

Now a most obvious limitation in the interpretation and application of this article, a limitation inherent in the very nature of the case, at once suggests itself; and that is, that the public or private acts or the judicial proceedings spoken of in the Article, must be such as have, for their subject matter, the succession with reference to which the quality is assumed, or at least, some right or thing supposed to depend upon it. Such was expressly held to be the rule in *Anderson* v. *Cox,* 6 A. R., 13.

" All law, 'says the court' must receive a reasonable interpretation. The judicial proceedings meant by Art. 982, are those in which the heir appears to claim as such some right in the succession."·

So Marcadé, in treating particularly of the "acceptation expresse" and of the "qualification d'héritier," even in acts pertaining to the things or rights with respect to which the quality has been assumed, uses the following emphatic language:

" De même, ce sera uniquement la manifestation d'une intention certaine qui pourra constituer l'acceptation expresse ; et il ne suffirait pas toujours que le successible cût pris dans un acte la qualité d'héritier. En effet, le mot héritier non pas seulement dans le monde, mais dans le Code lui-même, signifie tantôt celui à qui l'hérédité est irrévocablement acquise, tantôt celui-là seulement qui est appelé à la recueillir et qui est libre de l'accepter ou de la répudier, tantôt même celui qui a formellement déclaré n'en pas vouloir; c'est ainsi que l'art. 790, nous parle des 'héritiers qui ont renoncé.' S'il en est ainsi, il est bien impossible de prétendre que j'ai accepté par cela seul que je me suis qualifié d'héritier.' Vol. iii. pp. 149, 150.

" L'acceptation d'une succession," says the same author, *loc. cit.* " n'est et ne peut être rien autre chose que la manifestation de la volonté d'être héritier ; mais il faut que la volonté soit certaine et indiquée de manière à ne laisser aucun doute."

But this degree of certainty can only exist when in the acts or judicial proceedings specified by our article, something depends or is supposed to depend upon the assumption of the quality. To the same effect we quote Marcadé again, who sums up a verbal criticism of the structure of the corresponding Article of the Code Nap. with this sententious but comprehensive and accurate paraphrase of the Article itself:

" Notre article devait donc se contenter de dire que l'acceptation résulte de tout fait on de toute déclaration écrite manifestant d'une manière certaine l'intention d'agir en maître de la succession."

Now, in the case at bar, the assumption was, of the title of heir of *Juan Truxillo,* in an action instituted by us to assert, not any right or claim to his succession, or anything supposed to depend upon it, but in an action to obtain our share in the succession of *José :* in which action no demand was made or matter presented for argument by us, which could be held in any degree to turn upon the question, whether we were or were not the heirs of *Juan Truxillo,* in the technical sense in which the court has interpreted our assumption of that quality. In short, the declaration in our petition, that we were the sole heirs of *Juan Truxillo,* was language of description merely, used to set forth the affiliation or relationship of plaintiffs to *José Truxillo,* and, except for that purpose, having no place or significance in the instrument of pleading in which it is found. It was tantamount to declaring *Juan Truxillo* to be our " author " in respect of the rights of heirship claimed by us in the succession of *José,* but nothing more, it was the equivalent of the words " successible " or " habile à succéder " in the examples put by Marcadé. *Ibid.* 150.

The subject matter of our action being, not the succession of *Juan,* but that of *José,* to sustain which, we sought only to trace title through *Juan,* it certainly cannot be maintained that the use of the language in question amounts even to an act of heirship, much less to an express acceptance of the succession of *Juan.* It is not such an assumption of the quality of heir in a judicial proceeding as is contemplated by Art. 982, and can only be consigned to the same class with the cases supposed by Marcadé, in the passage first cited from that author, and, equally with them, would justify his emphatic language, "il est bien impossible de prétendre que j'ai accepté par cela seul que je me suis qualifié d'héritier."

Two cases from our own reports having been cited by defendant, viz: *Lescesne* v. *Cottin*, 2 N. S. 475, and *Frazier* v. *Hills*, 5 A. R. 114, it is only necessary to state, that in both of them the subject matter of the "judicial proceedings" was the succession with reference to which the quality of heir had been assumed and that in neither, was there any room to doubt of the intention of the party, "d'agir en maître de la succession." In short, the state of facts was just what we contend that it must be, to give rise to the application of Art. 982.

We submit then that the court has inadvertently given to the declaration relied on, taken in connection with the instrument of pleading in which it is found and weighed with reference to the object and purpose of our suit, a meaning and effect which do not belong to it; and that the court has evidently been led into that error by the state of facts developed by the defense with which our action was met and resisted."

A re-hearing having been granted, the judgment of the court was pronounced by

MERRICK, C. J. (SPOFFORD, J., and LEA, J., dissenting.) The plaintiffs, not content with describing themselves in their petition as children and representatives of *Juan Truxillo*, deceased, further aver, that they are "the only children and sole heirs of said *Juan*, deceased." This allegation was no doubt introduced out of abundant caution, and to strengthen the plaintiffs case not only on the ground that they, the plaintiffs, represented *Juan Truxillo*, but because they were *also his heirs*.

Article 982 of the Code declares, that the simple acceptance of a succession may be either express or tacit; that it is express when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. We understand a petition to be a judicial proceeding, and think the expression referred to was intentionally introduced into plaintiffs petition at the time it was drafted, but perhaps without a very accurate knowledge of the condition of the succession of *Juan Truxillo*, deceased.

La loi considère également comme une acceptation expresse le fait du successible qui prend, d'une manière même purement énonciative le titre d'héritier dans un acte, soit authentique ou *sous seing privé*, soit judiciaire ou extrajudiciaire. 2 Zachariæ, sec. 611. Sirey, 33, 2. 349 Limoges, 19 February, 1831.

We attach no importance to the exception filed by the defendant, 21st of March, 1858, that the plaintiffs had not accepted the succession of *Joseph Truxillo*.

It is therefore ordered by the court, that the judgment heretofore pronounced in this case, by this court, remain undisturbed.

SPOFFORD, J., with whom concurred LEA, J., dissenting. A closer examination of the petition has led me to the conclusion, that the plaintiffs have not therein assumed the quality of heirs of *Juan Truxillo*, in such an "unqualified manner" as to denote their acceptance of his succession as heirs pure and simple.

Their language, it strikes me, is that of description merely, used only for the purpose of tracing their rights to inherit from *José Truxillo*, through his predeceased brother *Juan*. The succession of *Juan* does not seem to have been in their thoughts.

In *Anderson* v. *Cox*, 6 An. 13, it was held "that the *judicial proceedings* meant by Article 982, C. C., are those in which the heir appears to claim, *as such*, some right *in the succession*." This means, of course, some right in the

succession in regard to which he assumes the quality of heir. Now, the plaintiffs claim no rights to the succession of their ancestor *Juan ;* they refer to him, only to show that, through him, they are entitled to inherit from his brother *José ;* it is *José's* succession alone of which they assume the quality of heirs in the manner intended by Article 982 of the Louisiana Code.

This article was taken from Article 778 of the French Code: and the commentators upon that code, generally recognize the distinction upon which it seems to me this case should turn, a distinction pointedly made in the case of *Anderson* v. *Cox.*

Thus, Zachariæ (tome ii, § 611) says: "Bien qu'en général, tout acte instrumentaire dans lequel un successible a pris, d'une manière énonciative, le titre d'héritier, emporte virtuellement acceptation expresse de l'hérédité, il en serait cependant autrement * * * s'il résultait évidemment des circonstances que le terme héritier a été employé comme synonime de *successible* ou *d'habile à se dire héritier.*"

So Touillier (tome ii, Deuxième Partie, No. 325): "Le titre d'héritier n'en imprime donc pas irrévocablement le caractère ; il ne constitue l'acceptation que lorsqu'il a été pris par un habile à succéder, *dans l'intention* d'accepter *la* succession et de s'obliger aux charges qu'*elle* impose."

So Rogron, commenting upon Article 778 Code Civil: "On peut quelquefois prendre cette qualité sans avoir voulu accepter."

And Marcadé, in his lucid commentary upon Article 778, is still more emphatic: "De même, ce sera uniquement la manifestation d'une intention certaine qui pourra constituer l'acceptation expresse; et il ne suffirait pas toujours que le successible eût pris dans un acte la qualité d'héritier. En effet, le mot *héritier*, non pas seulement dans le monde, mais dans le code lui-même, signifie tantôt celui à qui l'hérédité est irrévocablement acquise, tantôt celui-là seulement qui est appelé à la recueillir et qui est libre de l'accepter ou de la répudier, tantôt même celui qui a formellement déclaré n'en pas vouloir ; c'est ainsi que l'Art. 790, nous parle des '*héritiers* qui ont renoncé.' S'il en est ainsi, il est bien impossible de prétendre que j'ai accepté, par cela seul que je suis qualifié d'héritier ; et la première partie de l'article est encore plus mal rédigée que la seconde." Tome iii, No. 204. Again: "Notre Article (778) devait donc se contenter de dire que l'acceptation résulte de tout *fait,* ou de toute *déclaration écrite,* manifestant d'une manière certaine l'intention d'agir *en maître de la succession.*" Tome iii, No. 205.

This being a mixed question of law and fact, it is proper to observe that *Juan Truxillo* died on the 23d of February, 1843, that the petition in this case was filed on the 10th of March, 1853, and that nothing else is relied upon to show that the plaintiffs have accepted the succession of *Juan* purely and simply, but the descriptive words in this petition, the sole object of which is to claim a portion of the succession of *José Truxillo,* through the deceased *Juan.*

It appears to me, moreover, that the defendants are estopped to say, that the plaintiffs have expressly accepted *Juan's* succession in their petition, because, on the 21st of March, 1853, they filed an exception, in which they averred that "the plaintiffs having always refused to accept the succession of their uncle, *José Truxillo,* and the said succession having been duly settled and administered, they have no right to institute this action before legally declaring their

TRUXILLO
v.
TRUXILLO.

intention to accept said succession, *and to incur all liability as said heirs by representation of their father, Juan Truxillo.*"

I therefore think that the judgment should be set aside.