Hon. F. P. Poché,
Hon. R. B. Todd,
Hon. Wm. M. Levy,
Hon. C. E. Fenner,
} *Associate Justices.*

---

### No. 1002.

### N. M. Calhoun et al. vs. S. D. Crossgrove et al.

Grand-children, coming to the partition of their grand-father's estate, when their own father *died before* their said grand-father, are not bound to collate what their father received before his death, because they inherit in their own right, and not by right of representation. C. C. 1240. Re-affirming Decisions in 4 N. S. 557 and 23 An. 290.

APPEAL from the Seventh District Court, parish of Catahoula. *Ellis,* judge *ad hoc.*

---

*J. L. Dagg* and *Boatner & Lidell* for Plaintiffs and Appellees :

All matters put at issue in a suit for partition are concluded by the judgment rendered therein, which will operate as *res judicata.* The doctrine announced in 10 A. 636 applies only to such matters as arise before the notary, after the decree of partition has been ordered, and which were not submitted to the Court prior to rendering that decree.

Grand-children coming to the partition of their grandfather's estate are not obliged to collate an onerous obligation due to it by their father. C. C. 1240; 4 N. S. 557 ; 23 An. 290.

A purchase by a married woman is presumed to have been made with community funds until the contrary appears.

Where a community purchase has been annulled, the obligation of the vendor to restore the price he has received is a community asset, under the control of the husband.

The obligation of an heir to collate a prescribed debt, due by him to the estate of his ancestor, does not descend to his heir, who inherits by representation, and who has accepted his father's succession. By the act of accepting, he has bound himself to pay only subsisting and exigible debts.

*R. G. Smith* and *D. B. Gorham* for Defendant Brunot, Appellant:

A judgment decreeing the partition of the property of a succession among the heirs is not *res judicata* against a claim for collation subsequently made by one of the heirs, before the partition is made. This point is treated under several different heads, pages 2 to 11,. and the authorities bearing upon each, respectively, referred to.

When a married woman sells her property and the sale is afterward annulled on the ground of lesion, and she recovers the property, the obligation to restore the price received by her is an obligation of the wife, and not of the community between her and her husband.

When a married woman is executrix of her former deceased husband and the property under her administration is composed exclusively of the community property between them, the entire property, including the eventual interest of the executrix therein, is deemed by the law as the estate and succession of the deceased husband, and is administered by the executrix as succession property.

And the revenues of such property belong to the succession, and do not fall into the community between the executrix and her living husband, and are not under his control and administration, but under the control and administration of the executrix. 17 L. 247–8 ;. 24 An. 529.

Where a married woman purchases property, and in a suit against her for the property, to which her husband is made a party to authorize and assist her, she claims the property as her own, then as between the husband and heirs of the wife, he would be estopped from disputing the title of the wife, and the judicial admissions of the wife are binding on the heirs. 21 An. 343; 16 An. 271; 23 An. 83; Hen. 1469 § 6; Hen. 522 § 5; Louque,. 224 § 49.

The receipt by the husband of money belonging to the wife is a valid receipt by the wife. · C. P. 107; 25 An. 592; 15 An. 383; 26 An. 594; Louque, 675 § 3, ib. 624 § 1–2.

The proceeds of the crops of a plantation under administration is the property of the succession, and rent due for land belonging to the succession is a debt due to the succession, and not to the heirs.

A succession is a legal person, and does not lose its identity as such till the heirs are lawfully put into possession of the property. C. C. 873 ; 32 An. 1021; Louque, p. 160.

The revenues of the property of the succession received by the heirs are a part of the property of the succession, and should be brought into the partition. Donat §§ 2767, 2662, 2663, 2747; 27 An. 328; 32 An. 974.

In this case the Calhouns and Crossgroves come to the succession of their grandfather, Neely, not by representation of their mothers, but by transmission through them. 4 N. S. 590; 23 An. 290.,

A judgment is barred by prescription of ten years and it runs against minors. 24 An. 211.

The plaintiffs, Calhoun, who were all majors at the time they brought the present suit for partition of the same property embraced in the decree of 1860, it is evident that by the institution of this suit they have re-opened the whole question of collation, even though it had been closed by the decree of 1860.

The plea of *res adjudicata* cannot avail one whose action involves a renunciation of the plea. Hen. Dig. p. 764 § 21.

Both the plaintiffs, Calhoun and defendants, Crossgrove, are concluded by their acts and judicial admissions, and also by those of their ancestors.

----

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an action of partition among the grandchildren of Sanders Neely and wife. They constitute three branches, one suing, two defending.   No difference exists between them, as to the proportion in which the inheritance is to accrue to them.   The contention

involves only the liability of the plaintiffs and of the minors Crossgrove, defendants, to collate.

Brunot, the other defendant, who represents a branch by himself, claims that the plaintiffs should be made to collate three sums, which aggregate $16,650, alleged to have been received by their mother, from Widow Neely (at the time Mrs. Garrett), and that his co-defendants, the minors Crossgrove, who together represent a branch, should bring back $4650, which their mother had likewise received.

In bar to this demand for collation, the correctness of which is denied, many defenses are set up.

The plaintiffs and the minors Crossgrove plead *res judicata*. The latter claim, that the estate of Mrs. Garrett is indebted to them in the sum of $2156, with legal interest for twenty years, which they eventually set up in compensation. The defense of *res judicata* is predicated on a judgment rendered in 1860, in a partition suit brought by Mrs. Calhoun, plaintiffs' mother, against Mrs. Garrett and against her co-heirs. The claim for the $2156 is based upon a judgment rendered in 1859, homologating an account presented by Mrs. Garret as Neely's executrix. The minors Crossgrove further claim the rents and revenues of the property from 1859, the date of the account, up to the death of Mrs. Garrett, which occurred some two years since.

The lower court rejected those several demands and ordered a partition in kind. From this judgment Brunot, alone, has appealed. The minors Crossgrove have asked no amendment.

In this Court, both the plaintiffs and the minors Crossgrove, through their tutor, have pleaded the prescription of five, ten and twenty years.

The facts disclosed by the record are : Sanders Neely and Sarah A. Neely were husband and wife. As the only issue of their marriage, they had four daughters, who were minors at their father's death, in 1847. Neely left considerable property, and a will, appointing his wife the executrix thereof. She qualified, both as executrix and as tutrix. In 1848 Mrs. Neely became Mrs. Garrett.

It appears that subsequently, Mrs. Garrett became desirous of purchasing the interest of Mrs. Calhoun in her father's estate, and accordingly, a notarial act was executed. Several receipts were offered in evidence to prove, not only the receipt of the price of sale, but other amounts.

We are satisfied that those receipts have been shown to represent one and the same thing, the price of the hereditary rights and that of a slave. We do not understand that it is now insisted that they prove anything else.

There is also in evidence a receipt, purporting to be for the price of sale of Mrs. Crossgrove's interest in her father's succession, but the

testimony of the tutor of the minors shows that the money, which was received and was less than the receipt calls for, was paid on account of the revenues of the Neely plantation.

It is claimed that, as the sale by Mrs. Calhoun to Mrs. Garrett was judicially annulled, the price of sale should, under the terms of the judgment, which reserves the rights of Mrs. Garrett to claim it, be collated by the plaintiffs, as a debt of their mother, whom they represent.

We have thought proper briefly to state our views, touching the character of those claims, not because we considered the statement material for the determination of the controversy, but merely because we deemed it proper to place the parties in their rightful positions, for a better understanding of the case. .

Considering, from the conclusion which we have reached from a different standpoint for the decision of the differences of the parties, that it is unnecessary to pass upon the pleas of *res judicata, prescription* and *compensation*, set up in this matter, we will simply eliminate *them.*

Conceding that it is true that both Mrs. Crossgrove and Mrs. Calhoun have received from their mother the amounts charged against them,—we do not find that they were given to them *en avancement ·d'hoirie.* The utmost that we could find would be, that those ladies re-received those amounts and that 'they died *indebted* for the same to their mother, Mrs. Garrett.

It is important to bear in mind, not only that Mrs. Crossgrove and Mrs. Calhoun *died before* their mother, whose heirs they never were, but also, that their successions were accepted by mere operation of law, under benefit of inventory, on behalf of their minor children.

Such being the case, those children, coming *in their own right* to the succession of their grandmother, Mrs. Garrett, *are not bound to collate debts due her by their respective mothers.*

The maxim : *qui jure alterius utitur, eodem jure debet,* receives no application to a case of the nature of that now under consideration.

Although it may be true, as a proposition of law, that, if Mrs. Crossgrove and Mrs. Calhoun *had survived* their mother they would have had to collate, not only advances and gifts, but also debts, it is not the case when, having *died before* their mother, they leave heirs or representatives who are called to the inheritance and come to it *in their own right.*

Article 1240 of the R. C. C. provides that "the grandchild, when inheriting, *in his own right,* from the grandfather or grandmother, is not obliged to refund the gifts made to his father, even though he should have accepted the succession ; but if the grandchild comes in only by *right of representation,* he must collate what had been given to his father, even though he should have renounced the inheritance."

This article is almost identical with article 248 of the Napoleon Code, and was article 203 of the Code of 1808.

It has already been twice judicially expounded, and extended to debts due by the heir to the ancestor, however those debts may have originated.

In the case of Destrehan, 4 N. S. 557, in which two opinions were rendered, one by Judge Mathews and another, on rehearing, by Judge Porter, the question now before us, presented under this article, was most elaborately, maturely and ably considered. The Court there distinctly held, that grandchildren, coming to the partition of their grandfather's estate with uncles and aunts, are not bound to collate an onerous obligation due by their father. In the exhaustive opinion on the rehearing, the Court finally said : "If the father should die *after* the succession was opened, and his children came forward to represent him in the partition of their grandfather's estate, they could take neither more nor less than he could. But when the father dies *before* the grandfather, the grandchildren do not take their right from their father ; they receive it from the law, independent of his acts or his will, and even when he should have manifested a contrary intention."

In the succession of the Misses Morgan, 23 An., 290, in which the question was again presented and ably considered, the ruling in the Destrehan case was formally affirmed. 8 L. 228.

Those decisions are fully supported by all the French authorities bearing on the question. Rolland de Villargues, Rap. de Suc. § 2, n. 29 ; Malpel, n. 263; Chabot, v. 3, on Art. 848; Toullier 4, n. 458, 186, 187; Delvincourt, Notes et Expl. 28 ; Paillet, Leg. and Juris. des Suc., 2, 600; Manuel des Audiences, 177 ; Manuel de droit Français, Art. 744—note; Laurent, vol 2, p. 138, No. 175, on Art. 848 (Coùrs élém. de dr. civ.)

Concluding, therefore, that the Calhoun and Crossgrove heirs are not bound to collate, we find no error in the judgment appealed from, which is, therefore, affirmed with costs.