# JULY, 1892.

### JUDGES OF THE COURT:

HON. FRANCIS T. NICHOLLS, *Chief Justice.*
HON. CHARLES E. FENNER,
HON. LYNN B. WATKINS,
HON. SAMUEL D. McENERY, *Associate Justices.*
HON. JOSEPH A. BREAUX,

| 44 | 871 |
| 46 | 757 |
| --- | --- |
| 44 | 871 |
| 107 | 442 |
| 44 | 871 |
| 115 | 419 |
| 115 | 421 |

### No. 1423.

## °Succession of Ida Meyer.

There was no property in slaves in 1870, and had Articles 1361 and 1362 of the Code of 1825 been inserted in that of 1870 there would have been nothing upon which in the future their provisions could operate. Their omission from the last Code is due to that fact and not to any intention to control or affect obligations resulting from transactions in the past based upon them

Liability to collate in a succession by taking less, resulting from a donation of slaves made in 1852 by a mother to her son, remained unaffected by the subsequent abolition of slavery.

This obligation to collate in the succession of his mother by taking less is binding upon the children of the son, who come into the succession of their grandmother concurrently with their uncles and aunts, although their father died before his mother.

There is a distinction between "gifts" and "debts" in the law of collation, and in the present case the grandchildren are not sought to be made liable for a "debt" of their father by way of collation.

The entire commissions of an administrator are not properly exigible before the administration is terminated. Prior to this, his commissions on sums received and distributed should be paid, and his rights to the residue reserved for his final account. The decision in the Succession of Sparrow, 40 An. 484, affirmed, and its principles applied.

A PPEAL from the Twenty-first District Court, Parish of Iberia. Mouton, J.

*L. O. Hacker* for Appellant.

*Foster & Broussard* for Appellees.

The opinion of the court was delivered by

NICHOLLS, C. J.    On the 11th of April, 1852, Francois Mestayer and his wife, Ida Mestayer, by public act before Alcibiade DeBlanc, notary public, made donations to several of their children, then of age.    Among those donations was one to their son, Frederic Mestayer, of two slaves, each valued in the act at the sum of $750. The act declares that the donee shall not be held to collate in kind the said slaves in the successions of his father and mother, they expressly dispensing him from so doing, but that he shall collate the value of the same by taking less in those successions, the said collation to be by halves in each of the successions at the opening and partition thereof.

The father died intestate in 1872; the mother also died intestate in 1882, leaving as her legal heirs her children and descendants of her children.    The son Frederic died before his mother, in 1867, leaving a number of children, among whom are Felix, Carlos, Albert and Henry Mestayer.

On the 24th of May, 1889, Zenon Decuir, administrator of the succession of the mother, Ida Meyer, filed an account and tableau of administration wherein the heirs of Frederic are charged with the sum of $750 as being the one-half of the value of the slaves donated as above stated, as due by them by way of collation in the estate of their grandmother.

In the account mentioned the administrator claims $404.50 as being his commissions at 2½ per cent. on the amount of the inventory, which is stated to amount to $16,180.

To this account the four children of Frederic Mestayer, whose

Succession of Meyer.

names are given above, viz., Felix, Carlos, Albert and Henry Mestayer, filed an opposition, in which they declare " they are the heirs and representatives of Mestayer, their deceased father, who was a son of Ida Mestayer; that their father, an heir of Ida Mestayer, departed this life during opponent's minority, and that they are the heirs and representatives in all matters wherein he was interested. That as their deceased father's representatives in the above entitled succession they oppose the account and homologation thereof presented and filed by Zenon Decuir, administrator, and aver said account is incorrect and erroneous in each and every item charged and carried in both active and passive masses, as well as in the distribution and shares;" they aver " that said account is specially incorrect and erroneous in that it has them, as the representatives and heirs of their deceased father, charged with an alleged indebtedness pretended to be due by their said deceased father, when in fact neither opponents nor their father, either before or at the time of the death of Ida Mestayer, nor since, owed anything either to the estate of Ida Mestayer or to her; " they aver " that they owe the estate nothing, and that the item charged therein as an indebtedness and collation due by them as the heirs of their deceased father is an erroneous and incorrect charge, and should be stricken from the account; that the amount of $750 charged as due by them is incorrect and not due; that if the same represents the purchase price of anything, which is denied, it is of certain slaves, which is not legal and uncollectable and therefore erroneous and incorrect; that even if it was a valid and legal debt, which is denied, the same has long since prescribed, and opponents plead specially the prescription of three, five, ten and twenty years."

They further oppose the account filed, averring that " it is incorrect and erroneous in that it allows the administrator commissions on the full amount of the inventory, bad debts included, when in law and in fact he is entitled only on what amounts he has under his control and has collected, or the amount of the effects of the succession committed to his charge, bad debts excepted.

The trial of this opposition resulted in a judgment that " the said opposition be maintained in part only, and that the account be so amended and corrected as to strike therefrom one-half of the item and charge of $750 erroneously carried therein as an indebtedness due by opponents to said estate as collation for the value of two

slaves, and that in all other respects the opposition be dismissed and rejected."

From this judgment the administrator has appealed, and the opponents have filed in this court a motion praying for an amendment of the judgment "so as to strike from the administrator's account the entire amount of $750, and so as to reduce the administrator's commissions to the amount allowed by law on the sums actually collected and disbursed by him, and not on the entire inventory; and they pray that in all other respects the judgment of the lower court be affirmed."

We have copied extensively from the pleadings as being the simplest and best method of showing the issues between the parties.

No mention is made in the brief of opponents' counsel of the exception of prescription filed in the lower court. It is well to state, before proceeding to examine the questions arising in this case, that the effect of charging up the branch of the heirs of Ida Mestayer of which the opponents are some of the representatives, with the sum of $750 by way of collation, is not to bring it into debt, but that in spite of the collation of that amount that branch figures in the tableau as being entitled to receive over $300. There is no claim or pretension that the heirs of Frederic Mestayer, or any of them, will, as the result of the collation charged, remain under any personal liability either to the estate or to the co-heirs. The question, therefore, in this case, is not as to an "indebtedness" either to co-heirs or to creditors, but as to the amount which the children of Frederic Mestayer are entitled to receive from the estate of their grandmother (9 An. 97; 23 An. 299). But whilst there is in this case no question of any personal liability over and above the share of any of the heirs of Frederic Mestayer, it will not escape notice that, had such a question been presented, the opponents have placed themselves before the court as the heirs of their father.

An examination of the pleadings of the opposition will show that it was based upon the idea that the heirs of Frederic Mestayer were charged with the sum of $750, as being *debtors* to that amount for the price of two slaves purchased of their father, and that their contention was for non-liability on the ground that the slaves sold had been emancipated, and that by reason of that fact they had been released from all obligation.

The claim for non-liability from *collation* on the ground that the

slaves had been emancipated, and that the loss resulting therefrom should be borne by the succession of the donor, and on the further ground that by reason of the death of their father prior to their grandmother, there was an absence of any liability on their part to collate at all, seems to have been an after-thought.

There is no evidence in the record to show that the particular slaves donated to Frederic Mestayer were ever emancipated, and none to show where they were or what had become of them when emancipation took place. By the very terms of the donation to Frederic Mestayer from his parents, the precise course to be followed by him as to the matter of collation was fixed and agreed upon. He could not be called upon to collate in kind, and it was expressly stipulated that he was to collate by simply *taking* less to the extent of $1500, the estimated value of the two slaves. This would have been his position under Arts. 1361 and 1362 of the Civil Code of 1825, independently of any stipulations on the subject. The position was simply strengthened by the expressed will of his parents, consented to be by him followed.

Art. 1361 of the Code of 1825 (which was the code at the time of the donation) declares that when slaves have been given the donee is not permitted to collate them in kind—he is bound to collate for them by *taking less*, according to the value of the slaves at the time of the donation, and *therefore* (says Art. 1362) "the donation of slaves contains an absolute transfer of the rights of the donor to the donee in the slaves thus given. They are at the risk of the donee, who is bound to support their loss or deterioration at the same time that he profits by the children born of them, and if the donee disposed in good faith of any or all of the slaves the action of revendication for recovering the slaves on the part of his co-heirs for the collation due to them, will not lie against those who are the purchasers or holders of the slaves."

Had it been proven, therefore (which it was not), that the slaves had been lost whilst in the ownership of their father or themselves through their emancipation, that fact would have had no legal effect in this case. See 34 An. 457; 40 An. 335.

But the plaintiffs say that the Code of 1870 and not that of 1825 must govern this case, as it was that in existence at the date of the death of Ida Mestayer, and coupling with Art. 1250 of the present code, which declares that immovable property given by a father,

mother, or other ascendant to one of their children or descendants, and which has been destroyed by accident while in the possession of the donee and without his fault, previous to the opening of the succession, is not subject to collation, the fact that Arts. 1361 and 1362 of the former code are not in that of 1870, they deduce the consequence that Frederic Mestayer and his children are not bound for any collation in the matter of the slaves. This result they reach by declaring that slaves are immovable property, by assuming as true and proved (which has not been done) that the slaves were emancipated and hence destroyed under the terms of Art. 1250, R. C. C., and by arguing that by the effect of the non-appearance of Arts. 1361 and 1362 in the Code of 1870 these articles were repealed, and the liability to collate as resulting from transactions anterior to the Code of 1870 was extinguished. The only reason why Arts. 1361 and 1362 of 1825 were not reproduced or continued in the Code of 1870 was that at that time there was no property in slaves and there would be nothing in the future upon which such articles could be made to operate. There was no repeal nor intention nor attempt to repeal those articles, so as to evade or affect the rights or obligations of parties who had acted on the strength of them in the past. The rules of collation as respects slaves contained in Arts. 1361 and 1362 were special rules on that particular subject. totally independent of any classification of them as to being movables or immovables. Slaves have for some purposes been dealt with by the law as movables, and for others as immovables.

The Code of 1870 did not place them in either one class or the other or deal with them at all from the standpoint of property; it simply ignored them for the future. The rights and obligations of parties as arising from past transactions were unaffected by that fact.

But the opponents say that, granting that their father, holding as the donee of slaves under an act in which it was stipulated that he should collate for their value by taking less in the succession of the donor, should, both by the terms of the act of donation and under the law (Arts. 1361 and 1362), be held to a compliance with the obligation of collating by taking less, yet they, as her children, are not committed to nor held by that obligation, for the reason that their father having died before their grandmother they came into the succession of the latter as "heirs *in their own right*," freed from any obligation

of collation for which their father would have been bound, whether in kind or by taking less, and whether resulting from donations to him or debts due by him to the succession, and they claim they are justified in so asserting by the decisions of this court in the cases of Destrehan vs. Destrehan, 4 N. S. 557, the succession of Morgan, 23 An. 299, and Calhoun vs. Cosgrove, 33 An. 1004.

It is not true that these opponents came into, or could come into, the succession of Ida Mestayer "in their own right," for in point of fact, and ignoring the fiction of representation, they stand in the second degree of relationship to their grandmother, whilst the latter has now living a number of children, who stand toward her in the first degree.    The effect of placing the children of Frederic Mestayer into their actual degree of relationship would be to exclude them altogether from the succession.    Independently of representation the nearest relation in the descending line is called to the legal succession.  C. C. 877-878.  These children come into the succession of their grandmother not in their own right, but by representation of their father, for all the heirs of Ida Mestayer are in the direct descending line, and Art. 895 of the Civil Code, speaking of representation, says: "It takes place *ad infinitum* in the direct descending line.    It is admitted in all cases, whether the children of the deceased concur with the descendants of a predeceased child, or whether all the children having died before him, the descendants of the children be in equal or unequal degrees of relationship to the deceased."    Now, if this be true, how do these opponents stand relatively to the question of collation?    Art. 1240 of the Code, referring to grandchildren, says: "In like manner the grandchild, when inheriting in his own right from the grandfather or grandmother, is not obliged to refund the gifts made to his father, even though he should have accepted the succession, but if the grandchild comes in only by right of representation he must collate what has been given to his father, even though he should have renounced his inheritance."

But, say the opponents, if this be so, collation by grandchildren, situated as they are, does not extend to "debts" due by the father, and the obligation of their father in this case is a debt of his.    An obligation to collate in a succession by taking less resulting from a donation to a presumptive heir of slaves, and which obligation to collate by taking less is affixed by law and by the terms of the donation, is not, in a legal sense of the term, a "debt" of the father.

In 9 An. 97, the court said that to hold that an obligation to collate was discharged by bankruptcy proceedings would be subversive of the principle consecrated in our Code that the obligation of collating is founded on the equality which must be naturally observed between the children and other lawful descendants who divide among themselves the succession of their father, mother and other ascendants. It further said that such an obligation could not be viewed as a "debt" reached by the bankrupt law—that it was nothing more than the receipt of the share of an heir in advance. In speaking on this subject it said that, were the heirs in that particular case seeking (which they were not) to receive the overplus which the opponent had received beyond his share, a different question would be presented.

Were this obligation to be considered in this case in the light of a "debt" of the father, the rights and obligations of these opponents, independently of collation as resulting from their acceptance of the quality of his heirs and representatives, would have to be discussed, but the obligation which we are considering in the matter before us has no such character.

The decision in Destrehan vs. Destrehan, 4 N. S. 557, cited by opponents, is directly against their pretensions when applied to the facts of the present case.

In the matter of the Succession of Morgan, 23 An .299, there was no question of "collation" involved, the heirs being not in the descending, but all in the collateral line, the issue besides being simply under the circumstances therein shown as to the distributive share to be taken in the succession of an aunt by a nephew, in a case where the father of the latter had died before the aunt, heavily indebted to her, and where the son having renounced his father's succession, claimed as an heir in the succession of the aunt by "representation" of the father.

The syllabus in the matter of Calhoun vs. Cosgrove et al., 33 An. 1004, is broader than is justified by the decision itself. The court in that case said that, conceding that both Mrs. Calhoun and Mrs. Cosgrove (whose children were sought to be made liable in the succession of the grandmother for moneys received by them from their own mother)—conceding that both Mrs. Calhoun and Mrs. Cosgrove had received from their mother the amounts charged against them, it did not find that they were given them *en avancement d'hoirie*

—that the utmost it could find was that those ladies received those amounts, and that they died "indebted" for the same to their mother —that it was important to bear in mind not only that Mrs. Cosgrove and Mrs. Calhoun died before their mother, whose heirs they never were, but also that their successions were accepted by mere operation of law in behalf of the minor children.

The court went on to say that, such being the case, those children, *coming in their own right* to the succession of their grandmother, were not bound to *collate debts due her by their respective mothers.* The question there was whether in a succession situated as was that of Mrs. Garrett her grandchildren could be made to collate, not donations nor advances made to their parents, but "debts" due by them to the succession of the grandmother. It is true that the court, in speaking of the manner in which the grandchildren had succeeded in that succession, said they had done so *in their own right,* but those words were not intended to be used as going to declare that they had not succeeded in that succession by "representation." They were simply used for the purpose of showing that heirs might go into a a succession under such peculiar circumstances that although "representing" a person, none the less "representation" did not extend in that particular case *so far* as to carry with it, as a consequence, a liability by way of "collation" for the *debts* of the person represented.

The term "*inheriting in one's own right*" is a technical one used to contradistinguish that method of inheriting from "*inheriting by representation*" C. C., 902-1028. Marcade under *Art. 759.* C. N. section 2.

We are of the opinion that the children of Frederic Mestayer are bound and should be held to collate by taking less in the succession of their grandmother, Ida Meyer, for the sum of $750, as resulting from the donation of Francois Mestayer and wife to their son, Frederic, of two slaves, in the public act before Alcibiade DeBlanc, notary public, on the 11th day of April, 1852. It is evident that the judge of the lower court was of this same opinion, but that he made an error as to the amount to be collated, doubtless from not noticing that there were two slaves, and not one, donated in that act, for had the judge thought otherwise he would have ordered the striking out of the account the whole sum of $750, instead of reducing, as he did, the item to one-half of its amount. This error will have to be corrected.

In regard to the amendment asked by the opponents respecting

the commissions of the administrator, we were inclined to believe, from the situation and condition of affairs as shown by the account filed, that the succession of Ida Mestayer was in a position such as to be practically and substantially closed, but the administrator himself, in the account filed, designates it as a "provisional" one. What his motives for this may have been we do not know, but there must have been, in his opinion, some good reason for it.   In view of that fact, and in view of the incompleteness of the record before us, we do not think that the administrator should be accorded, for the present, more than commissions at $2\frac{1}{2}$ per cent. on the sum of $4911, that being the amount received and accounted for by him in the account filed by him, and that the question of his right to other and greater commissions should be reserved to him to be advanced and passed upon in further future proceedings.

For the reasons assigned in this opinion it is hereby ordered, adjudged and decreed that the judgment of the court below be so amended as to replace in the account and tableau of Zenon Decuir, administrator of the succession of Ida Meyer, to the full amount of $750, the item ordered to be reduced by the judgment below by striking therefrom one-half of the same, and that the opposition of Felix, Carlos, Albert and Felix Mestayer to that item be and the same is hereby rejected in its entirety, and the said item being so replaced on the said account for its original amount, the account as to said item be and the same is hereby approved and homologated.   It is further ordered, adjudged and decreed that the judgment of the court below as to the item of administrator's commissions be so amended as to limit for the present the commissions of Zenon Decuir, administrator, to $2\frac{1}{2}$ per cent. on the sum of $4911, with the right reserved to him to recover the residue to which he may be entitled on the final settlement of the succession. It is further ordered that opponents pay the costs of this appeal.

BREAUX, J.   Having been of counsel is recused.