162 So. 196

Succession of SCHNEIDAU.

No. 33195.

April 29, 1935.

Rehearing Denied May 27, 1935.

Henry W. Robinson, of New Orleans, for appellant.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellee Mrs. William P. Conery.

O'NIELL, Chief Justice.

This appeal is from a judgment sustaining an opposition to an account filed by the testamentary executor of Mrs. Paul M. Schneidau. The opponent was Mrs. Sadie Schneidau Conery, a daughter of the deceased, claiming that her brothers should collate in the succession of their mother one-half of the amounts which they had received as donations or advances from their father. Mrs. Conery's opposition was sustained, and the executrix appealed to the Court of Appeal for the parish of Orleans. That court, ex proprio motu, transferred the case to this court, because the fund to be distributed exceeded $2,000, and hence the matter was within the jurisdiction of this court. Succession of Schneidau, 157 So. 137. The appeal was brought up on a statement of facts, admitted by all parties.

 Paul M. Schneidau died in 1917, survived by his widow and two sons and two daughters; namely, Paul S. Schneidau, Arthur Schneidau, Mrs. Marietta Schneidau White, and Mrs. Sadie Schneidau Conery. The estate was all community property. The succession was opened about two weeks after Mr. Schneidau died, and a judgment was rendered sending the widow into possession of the property, as owner of one half and as usufructuary of the other half, and recognizing the sons and daughters as the owners of the half of the property which was subject to the widow's usufruct. The succession of Paul M. Schneidau was closed in that way. There were debts due to the estate by Paul S. Schneidau and Arthur Schneidau for donations and advances which their father had made to them; but, as their mother owned one half of the estate and had the usufruct of the other half during her lifetime, there was no occasion then for Mrs. Conery to demand collation of her brothers. In January, 1924, Paul S. Schneidau and Arthur J. Schneidau transferred to their mother their interest in the estate, for $100 cash; and in the deed Paul S. and Arthur J. Schneidau acknowledged that their indebtedness to the estate, for advances which their father had made to them, was more than they would have inherited. In December, 1926, Mrs. Marietta Schneidau White made a similar transfer of her interest in the estate to her mother. Thereafter Arthur J. Schneidau died, leaving as his only heir a daughter, Mrs. Marietta Le Breton. In September, 1931, Mrs. Paul M. Schneidau died, leaving as her heirs, her son, Paul S. Schneidau, her two daughters, Mrs. Sadie Schneidau Conery and Mrs. Marietta Schneidau White, and her granddaughter, Mrs. Marietta Le Breton. Mrs. Paul M. Schneidau left a will, giving several special legacies to individuals and institutions, and leaving the residue of her estate to her son and two daughters and granddaughter, share and share alike, and in trust for ten years. The succession of Mrs. Paul M. Schneidau was opened, and the executor qualified soon after Mrs. Schneidau died. In December, 1931, Mrs. Conery, who was the only heir who had not sold to her mother her interest in the es-

tate of her father, brought proceedings against the executor of her mother's will for an accounting of her father's estate, which her mother had possessed as usufructuary. Mrs. Conery showed that the amount which her brothers, Paul and Arthur Schneidau, owed to the succession of their father, for advances which he had made to them, was $12,172.48, and that, in the collation of that amount by them, she (Mrs. Conery) should receive one-fourth, or $3,043.12. Mrs. Conery conceded that, as the $12,172.48 was due to the community, only half of the amount, or $6,086.24, was due to the estate of her father, of which her mother had enjoyed the usufruct. Mrs. Conery followed the rule which was laid down in Baillio v. Baillio, 5 Mart. (N. S.) 228, and Dickson v. Dickson, 33 La. Ann. 1370, and Berthelot v. Fitch, 45 La. Ann. 389, 12 So. 625, to the effect that, when donations or advances have been made of community property or community funds, by the father to one of his children, one half of the amount to be returned (either actually or by taking less) must be collated in the father's succession and the other half in the mother's succession. The proceeding brought by Mrs. Conery was tried contradictorily with the executor and the heirs of Mrs. Paul M. Schneidau, and, due proof having been made that Paul and Arthur Schneidau owed the $12,172.48, and that Mrs. Conery was entitled to a fourth of that sum, or $3,043.12, in order to equalize the inheritances, the court gave judgment ordering the executor to pay to her half of that

sum, $1,521.56, out of the estate of Paul M. Schneidau, of which the widow had enjoyed the usufruct. The judgment was rendered and signed in July, 1932, and no appeal was taken from the judgment. Nearly two years afterwards the executor filed his final account, and refused to recognize the indebtedness of $1,521.56 which was due to Mrs. Conery from the estate of her mother. Thereupon Mrs. Conery filed her opposition. On the trial of the opposition, counsel for Mrs. Conery offered in evidence the record of the proceedings, including the evidence adduced and the judgment rendered in July 1932, fixing the indebtedness due to the matrimonial community between Mrs. Conery's mother and father at $12,172.48, for the advances made by the father to his two sons, out of community funds. The evidence was objected to by the executor, on the ground that the judgment did not settle the controversy as res judicata, because the parties to the former proceedings were not the same as the parties to the subsequent proceeding. It is argued that the parties were not the same because the legatees of Mrs. Paul M. Schneidau were represented by the executor in the subsequent proceeding. It appears, however, that all of the parties to the proceeding on the opposition of Mrs. Conery to the account of the executor were parties to the original proceeding in which the amount due to Mrs. Conery by the community was fixed at $3,043.12, for the advances received by her brothers; because the original proceedings, in which

this sum was fixed by a judgment of court, were instituted after the death of Mrs. Paul M. Schneidau, and against the executor of her will, as well as her heirs. In fact, the executor paid to Mrs. Conery the $1,521.56 due by the estate of Paul M. Schneidau, of which the widow had enjoyed the usufruct. According to the three decisions which we have referred to, Baillio v. Baillio, Dickson v. Dickson, and Berthelot v. Fitch, the judgment which was rendered in favor of Mrs. Conery, fixing at $1,521.56 the amount due to her by the estate of her father, of which her mother had enjoyed the usufruct, fixed also the amount due to Mrs. Conery by the estate of her mother, subject, of course, to any payments which might have been made, or credits which might have arisen, after the death of Paul M. Schneidau.

On the trial of Mrs. Conery's opposition to the account of the executor, he and all other parties concerned were allowed to offer any evidence tending to show whether Mrs. Conery had received any payments or advances from her mother after the death of her father, or whether there was any other reason why the amount due to the community, in the way of collation, at the time of the death of Paul M. Schneidau, should not be reduced. But no such evidence was offered.

◼ The executor relies upon a declaration made by Mrs. Paul M. Schneidau, as the preface, or first disposition, in her will, viz.:·

"I declare the advances which I have made to my son, Paul S. Schneidau, wer· in compensation of valuable and devoted services rendered to me, resulting in the building of the value of my estate, and I cancel same as having been fully compensated and offset."

Mrs. Schneidau's reference to the advances which *she* had made to her son, Paul S. Schneidau, has nothing to do with the advances which her husband had made to Paul S. Schneidau. He testified as a witness for the executor in this case, and admitted that his mother lent or advanced him sums of money, ranging from $100 to $200, several times after his father's death, and that he lived at his mother's house and at her expense during the fourteen years after his father's death. He testified that during that period he rendered services to his mother by taking care of her estate and of her personal affairs. Evidently these services were the "valuable and devoted services" which Mrs. Schneidau declared in her will had "compensated and offset" the advances which *she* had made to her son, Paul S. Schneidau; which, of course, had nothing to do with the advances which his father had made to him.

◼ The executor contends that the share of Mrs. Le Breton in the succession, as one of the four heirs and residuary legatees, of her grandmother, is not

subject to collation, because, according to article 1240 of the Civil Code, a grandchild is not obliged to refund the gifts made by the grandparent to the grandchild's father or mother, when the grandchild inherits, not by representation, but in his or her own right from the grandparent. Mrs. Le Breton did not inherit at all from her grandfather, because her father survived her grandfather and inherited from him. The obligation of Mrs. Le Breton's father, to collate in the succession of his father and mother, for the advances made to Mrs. Le Breton's father by his father, out of funds belonging to the community existing between his father and mother, was fixed at the time of his father's death, and was finally determined by the judgment rendered in July, 1932. It is true that Mrs. Le Breton, as a testamentary heir, or an instituted heir, came into her grandmother's succession in her own right, and not by representation. As a legal heir of her grandmother, Mrs. Le Breton would have inherited only by representation of her father; but she is not being called upon to collate in the succession of her grandmother for gifts or advances made by the grandmother.

 The executor cites, in support of the proposition that Mrs. Le Breton, in so far as she inherits in her own right, is not obliged to collate in the succession of her grandmother, Destrehan v. Destrehan's Executors, 4 Mart. (N. S.) 557, and Calhoun v. Crossgrove, 33 La. Ann. 1001. In those cases it was held that a grandchild who had renounced the succession of his father, or who had accepted the succession of his father under benefit of inventory, and who therefore came into the succession of his grandfather by representation only, was not subject to collation in the grandfather's succession for the ordinary debts which the father had owed to the grandfather, but was subject to collation for the "gifts" made by the grandfather to his son, en advancement d'hoirie. The court recognized a distinction between such "gifts" and "debts," in the law of collation. That is well explained in Succession of Meyer, 44 La. Ann. 871, 11 So. 532, where it is pointed out that the syllabus of the decision in Calhoun v. Crossgrove is inaccurate. The distinction made in the Destrehan Case was referred to with approval in the following cases: Hall v. Emerson's Curator and Heirs, 11 La. 1, 10; Truxillo v. Truxillo, 11 La. Ann. 412, 413; Succession of the Misses Morgan, 23 La. Ann. 290; McKenzie v. Bacon, 40 La. Ann. 157, 4 So. 65; and Chevalley v. Pettit, 115 La. 407, 418, 39 So. 113. In Truxillo v. Truxillo, it was held that the heirs who inherited by representation of their deceased father were responsible for the debts which he owed to the succession, because the heirs had not renounced the succession of their father or accepted it under the benefit of inventory, and were held to have accepted it unconditionally. In that respect the case was distinguished from the Destrehan Case. In the present case it is not claimed

that Mrs. Le Breton renounced the succession of her father or accepted it under the benefit of inventory; and the record shows that she was of the age of majority when her father died, and hence that his succession was not accepted for her under the benefit of inventory, by effect of the law. If Mrs. Le Breton had renounced the succession of her father, or if she had accepted it under the benefit of inventory, she might have had an interest in showing, in so far as her grandmother's succession was concerned, that the indebtedness of her father to the community existing between her grandfather and grandmother was not for "gifts," en advancement d'hoirie, but for ordinary debts. But that question was foreclosed by the judgment which was rendered in July, 1932, fixing the collation which Mrs. Le Breton's father owed to the community which had existed between his father and mother.

The judgment appealed from is affirmed.