371 So.2d 272 (1979)
In the Succession of Florence Bell Jones SIMMS.
Carolyn Jane Simms HOUGH, Plaintiff-Appellee,
v.
Harold A. SIMMS, III, et al., Defendants-Appellants.
No. 6854.
Court of Appeal of Louisiana, Third Circuit.
April 1, 1979.
Rehearing Denied June 6, 1979.
*274 Bean & Rush, Warren D. Rush, Lafayette, for defendants-appellants, Simms Group.
W. Paul Hawley, Lafayette, for plaintiff-appellee, Carolyn Hough.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Joseph Onebane, for defendant-appellant, Simms.
Voorhies & Labbe, H. Lee Leonard, David Foster, Lafayette, for defendants-appellants, Jacobsen Group.
Before WATSON, SWIFT and STOKER, JJ.
SWIFT, Judge.
This is a suit for declaratory judgment seeking a determination of the respective rights and duties of the parties under the will of Florence Bell Jones Simms (Mrs. Florence Simms).
The parties involved in the action are:
1. Plaintiff-Appellee, Carolyn Jane Simms Hough (Mrs. Hough);
2. Defendant-Appellant, Willard H. Simms (Willard Simms);
3. Defendant-Appellant, Harold A. Simms, III, Nancy Jean Simms Springhorn, Barbara Jane Simms, Mary Louise Simms, and David R. Simms (Harold Simms, III, et al.);
4. Defendants-Appellees, Marvin W. Jacobsen and Charles Alfred Jacobsen (Jacobsens); and
5. Defendant-Appellee, Dorothy Russell Simms, executrix (Mrs. Dorothy Simms).
The decedent, Florence Bell Jones Simms, was married to Harold A. Simms, Sr., who predeceased her. They had two children, Willard L. Simms and Harold A. Simms, Jr., both of whom died before their mother. Willard L. Simms had two children, Mrs. Hough and Willard Simms, who are the grandchildren of Mrs. Florence Simms. Harold A. Simms, Jr. was married to Mrs. Dorothy Simms and they had five children, Harold Simms, III, et al., who are also the grandchildren of the decedent. The Jacobsens are the children of Mrs. Hough by her first marriage and hence are the great-grandchildren of the decedent.
Mrs. Hough, Willard Simms and Harold Simms, III, et al., of course, are forced heirs of Mrs. Florence Simms and are also legatees under her will. The Jacobsens claim to be legatees under the will. Mrs. Dorothy Simms has no claim to the succession property except as executrix.
Harold A. Simms, Sr. purchased from the Beadle family by two deeds dated June 16, 1927, approximately 56.95 arpents of farmland which fronted on and extended easterly from the Vermilion River. Its depth was greater than the frontage. On August 23, 1933, he bought from Isaac D. Bendel a 55.48 arpent tract that was situated to the south, or down river, from the land previously purchased. The two parcels were separated by property of William Thibodeaux.
Mr. Simms died in 1945 and his widow, Mrs. Florence Simms, was placed in possession of the two tracts of land in full ownership without dispute by the succession judgment dated June 6, 1955.
On September 22, 1955, Mrs. Florence Simms conveyed the second tract to her son, Harold A. Simms, Jr. This was actually a *275 donation evidenced by a notarial act and also a simulated cash deed. However, apparently for title purposes, only the latter was recorded. Shortly thereafter the donee obtained from J. Howard Gassie a strip of land to be dedicated as a public road between his property and the Kaliste Saloom Road, which parallels the river. He conveyed these tracts to H. A. Simms and Associates, Inc., which subdivided same into Ivanhoe Estates on June 5, 1956. Thereafter the corporation acquired the William Thibodeaux land and subdivided it into North Ivanhoe Estates No. 1 and North Ivanhoe Estates No. 2.
By act dated March 9, 1956, Mrs. Florence Simms conveyed to Dr. Walter E. Leonpacher a .72 acre parcel of land and to Dr. Louis Leonpacher a strip 60 feet in width from the 56.95 arpent farm mentioned first above and the parties agreed to establish certain rights of way for roads on their respective properties. One of these, which later became East Bayou Parkway, ran in a northerly-southerly direction through and divided Mrs. Florence Simms' farm, with about 28 acres thereof on the eastern side of the road.
On March 6, 1959, Mrs. Florence Simms conveyed to Smith-Butcher, Incorporated, about 13.86 acres of land which was all of her original 56.95 arpent tract situated on the western side of the road except two lots and a small parcel on the river. Smith-Butcher subdivided its property into Flossmore Place Subdivision on March 10, 1959. The three tracts that Mrs. Florence Simms had retained were designated on the plat as Lot 14 on which the old farm house was located and Lot 4 where her new home was built. Her other parcel was designated thereon as a "Private Park".
Mrs. Hough lived with Mr. and Mrs. Harold A. Simms, Sr. for about 15 years and was raised by them from childhood until she left for business college in Missouri in 1938. Although she moved to Hawaii not long thereafter, except for the first few years of her residence there she kept in touch with her grandparents through correspondence and visited Mrs. Florence Simms on a number of occasions up until the latter died. It was obvious that the decedent was very fond of Mrs. Hough.
Mrs. Florence Simms executed two wills, the first on June 10, 1958, with a codicil thereto dated January 25, 1960. The second will, which expressly revoked all prior testaments, was executed by her on April 4, 1963. Its pertinent parts are as follows:
"At my death I direct that all of my just debts be paid and all taxes including all cost of the settlement of my estate.
"I give and bequeath my two large diamonds to Nancy Jean Simms and to Carolyn Jane Simms, one of the diamonds to go to each of them.
"I give and bequeath the Masonic diamond to Mary Lou Simms, and my other diamond to Barbara Jane Simms.
"I give and bequeath unto Carolyn Jane Simms the property known as Boskydel, which is bounded by Ivanhoe Estates on one side and Walter Leonpacher's property on the other.
"Subject to the bequests above made, I give and bequeath the entire remainder of my estate, including real estate, movable property, stocks, bonds, cash and all other assets whatsoever which I may own or possess at the time of my death, to my grandchildren, one-half (½) to Carolyn Jane Simms, Irving Jackson, Butch Jackson and Harold Willard Simms in equal proportions, or one-fourth (¼) to each, and one-half (½) to Nancy Jean Simms, Harold A. Simms, III, Barbara Jane Simms, Mary Lou Simms and David Russell Simms, in equal proportions, or one-fifth (1/5) to each."
Mrs. Florence Simms died on June 19, 1970. Her succession was opened and the last will of April 4, 1963 was admitted to probate.
Disputes developed as to interpretation of testament and disposition of the succession property. Mrs. Hough then filed this action.
The issues presented for determination on this appeal are:
*276 1. Whether the bequest to Mrs. Hough of "Boskydel" in the testatrix's will was intended to include the tract of land comprising about 28 acres on the eastern side of East Bayou Parkway that was a part of the 56.95 arpent farm bought by Harold A. Simms, Sr. from the Beadles in 1927?
2. Whether the 55.48 arpent tract that was donated by the testatrix to Harold A. Simms, Jr. in 1955 must be collated by Harold Simms, III, et al., and if so, the value thereof?
3. Whether the legacies of the testatrix's diamonds were effective?
4. Whether Mrs. Hough must collate gifts and sums expended by the testatrix and her husband for her food, clothing and education and, if so, the value thereof?
5. Whether Marvin W. Jacobsen and Charles Alfred Jacobsen are the parties referred to by the testatrix in the residuary clause in her will as "Irving Jackson" and "Butch Jackson"?
6. Whether Willard Simms has been deprived of his legitime?
1. Boskydel.
According to LSA-C.C. Article 1712:
"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."
And Article 1715 of our Civil Code provides:
"When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention."
It seems that the testatrix gave names to all of the properties she and her husband owned in Lafayette Parish. The home in which they first lived on Pinhook Road was known by them, their relatives and most probably others as "Flossmore". The 56.95 arpent farm purchased from the Beadles in 1927 on which the testatrix was living at the time of her death was known as "Boskydel" and the tract she and her husband acquired from the Bendels in 1933 which she donated to their son, Harold A. Simms, Jr., in 1955 was known as the "Annex". Mrs. Hough's testimony as to these designations was confirmed by Mr. and Mrs. Merlin C. Smith, Randolph Briant and Louella S. Williams, who were related to the decedent and quite familiar with her properties but had no pecuniary interest whatsoever in the succession. All of them agreed that the name "Boskydel" referred to the whole farm and not just a house thereon. Despite rigorous cross-examination, the plaintiff's witnesses were adamant in their testimony in this regard even though some of their memories were hazy as to the exact location of the farm's boundaries.
That the testatrix intended to leave Mrs. Hough all she had left of this farm is confirmed by her prior will of June 10, 1958, and the codicil thereto. She made the same bequest to Mrs. Hough and used the same description of Boskydel in both of her wills. And, in the codicil to the first will Mrs. Simms said:
"In my last will I bequeathed my farm known as Boskydel to Carolyn Jane Simms Hough. I have sold some acreage from the farm and expect to continue to do so. I am placing the proceeds of the sale of the farmland in the Lafayette Building Association. I now give and bequeath unto Carolyn Jane Simms Hough all money and stock which I own in the Lafayette Building Association at the time of my death, in addition to the remaining land comprising the said farm, which I also bequeath to her."
Although the first will and its codicil were expressly revoked by the latter will that was admitted to probate, they were clearly admissible as evidence of the testatrix's intention as to the bequest to Mrs. Hough in the second testament.
The court is convinced that the testatrix intended to leave Mrs. Hough all that she had not sold of the original farm known as Boskydel despite the fact that the northeasterly bounding owner in the description *277 of the property in the bequest (Walter Leonpacher) owned only a small tract adjacent to the Flossmore Place lot on which Mrs. Florence Simms resided in her new home on the westerly side of East Bayou Parkway. Actually, Walter Leonpacher's father, or his heirs if he was deceased at the time, owned other property along most of the northeasterly boundary of Boskydel that had been subdivided into Bois de Lafayette and its lots were then being sold by the Leonpachers. Being the one with whose name she probably was most familiar, it is understandable that the testatrix used the name Walter Leonpacher as the northeasterly bounding owner of Boskydel in her will.
In any event, according to Courvelle v. Eckart, 50 So.2d 325, 326 and 327 (La. App. 1 Cir. 1951):
"Citation of authorities is not necessary to substantiate the proposition that real estate may be transferred by name, such as a plantation, farm or estate designated by a certain name; and when this is done, in case of error in parcel described such as in the bounds, the name of the property will prevail. In this case, Baker sold to Fouqua the "Long Point Bend" without reservation, thus including in the sale the property in dispute."
This court is not inclined to attach any great significance in its determination of the testatrix's intention in this bequest to the fact that the residuary clause in the will contains the words "including real estate", even though she owned no real estate other than Boskydel when the will was executed on April 4, 1963. This was seven years before Mrs. Simms' death and few, if any, attorneys would fail to include such a provision in a residuary clause to cover the possibility that the testatrix might acquire other real estate prior to her death. As matter of fact, the residuary clause in this testament also included "bonds", but the descriptive list does not reflect that there were any in the succession.
Nor can any great weight be given on this issue to the plat attached to the act executed by Mrs. Simms, Dr. Louis Leonpacher and Dr. Walter E. Leonpacher of March 9, 1956 (Harold Simms # 4), which has the words "BOSKY DELL" printed entirely on that portion of the Simms tract lying to the west of a "PROPOSED ROAD" (East Bayou Parkway). Undoubtedly, the parties were concerned with the land conveyed and the rights of way to be established by the instrument, not with the extent and all boundaries of Mrs. Simms' property because the boundary line farthest from the river is not even shown thereon. The question to be determined in this action is not what the surveyor was thinking when he so labeled the plat. It is what Mrs. Simms intended when she executed the will. No one testified that she ever made any such distinction as contended by appellants when referring to Boskydel. Clearly, the preponderance of evidence is that she referred to the whole farm, which was situated on both sides of what became East Bayou Parkway, when she spoke of Boskydel.
The same may be said for the plat designated as Harold Simms # 3 dated October 13, 1954, which shows two locations for the proposed road and the right of way between Mrs. Florence Simms' property and the small tract that she later sold to Walter Leonpacher. The words "ESTATE HAROLD A. SIMMS" and "BOSKY DELL" all appear on the western side of the proposed road even though there is no question that the land there and the 28 acres opposite same on the eastern side of the road were both included in the 56.95 arpent farm purchased by Harold A. Simms, Sr. from the Beadles in 1927 and were then included in his succession.
That Mrs. Hough mistakenly interpreted the bequest immediately after her grandmother's death, of course, is to be considered along with the other evidence. However, the real question to be determined is what Mrs. Florence Simms intended by the bequest of Boskydel, not what Mrs. Hough first thought it meant.
This court concludes that the trial judge correctly interpreted the bequest to Mrs. Hough of Boskydel as including all of such *278 farm she had not disposed of at the time of her death, being the parcels of land more particularly described in Paragraph 2 of his judgment.
2. Collation by Harold A. Simms, III et al. of the "Annex".
Willard Simms contends that the trial judge erred in not requiring Harold Simms, III et al. to collate the donation inter vivos of the 55.48 arpent tract designated by Mrs. Florence Simms as the "Annex" that was donated by her to their father, Harold A. Simms, Jr., on September 22, 1955. The basis for the ruling was LSA-C.C. Art. 1240 which reads as follows:
"In like manner, the grandchild, when inheriting in his own right from the grandfather or grandmother, is not obliged to refund the gifts made to his father, even though he should have accepted the succession; but if the grandchild comes in only by right of representation, he must collate what had been given to his father, even though he should have renounced his inheritance." (Emphasis added)
In the trial judge's opinion Harold Simms, III, et al inherited from their grandmother in their own right as legatees under her will and did not come into the succession through representation of their deceased father. Consequently, collation was not required. We agree.
The term "inheriting in his own right" is not defined in our civil code and the articles thereof in regard to collation are ambiguous in a number of respects. We have not been cited nor has our own research disclosed a case wherein the particular point with which we are concerned has been decided. However, in Miller v. Miller, 105 La. 257, 29 So. 802 (La.App.1901), a grandfather bequeathed $20,000.00 to the daughter of a predeceased son and left the balance of his estate to his four children, share and share alike. When the grandchild elected to claim her legitime, the court held that she had to collate an $8,000.00 donation inter vivos previously given by the grandfather to this legatee's father and include the $20,000.00 legacy as a part of her legitime. Thereafter in Jordan v. Filmore, 167 La. 725, 120 So. 275 (La.1929), in referring to Miller our Supreme Court said:
"The court held that if the grandchild had not demanded a reduction of the residuary legacy to the disposable portion, and had accepted the legacy of $20,000, the grandchild could not be compelled to collate the $8,000 given to the grandchild's father by the testator during his lifetime, but that by claiming her legitime, the grandchild was obliged to collate the $8,000 and that the grandchild could not claim the legacy of $20,000 without deducting it from her legitime."
We take it from this that the Supreme Court interpreted Article 1240 of our civil code to mean that if the grandchild had chosen to take the legacy rather than claiming her legitime, she inherited the legacy in her own right under the will and would not have had to collate. However, when she took the other course she came into the succession through representation of her predeceased father and was required to collate under that codal article.
Although it was actually dictum, this same interpretation of Article 1240 was expressed by Chief Justice O'Niell in the Succession of Schneidau, 182 La. 613, 162 So. 196 (1935) as follows:
"It is true that Mrs. Le Breton, as a testamentary heir, or an instituted heir, came into her grandmother's succession in her own right, and not by representation. As a legal heir of her grandmother, Mrs. Le Breton would have inherited only by representation of her father; but she is not being called upon to collate in the succession of her grandmother for gifts or advances made by the grandmother." [Emphasis added].
We believe this to be the most logical and reasonable interpretation of Article 1240 and the other codal articles on the subject of collation in regard to the circumstances presently before this court. Consequently, the judgment of the lower court in this respect will be affirmed.
*279 3. Bequests of diamonds.
In her last will the testatrix bequeathed her "two large diamonds to Nancy Jean Simms and to Carolyn Jane Simms, one of the diamonds to go to each of them". The diamonds referred to are not of equal value. One of them, a diamond ring, was appraised at $1,950.00 and the other, a diamond pin, was valued at $895.00.
The trial judge held that the intention of the testatrix as to which legatee gets which diamond could not be ascertained as there were no circumstances proved to aid him in this connection. He declined the suggestion of counsel to give the two large diamonds to both legatees in indivision and held that the legacy was a nullity. The diamonds thus became part of the mass of the succession.
On appeal, both legatees have renewed their request that the two diamonds be awarded to them in indivision and that they be allowed to work out a partition thereof. None of the other parties in this suit have indicated any objection to this interpretation of the legacy.
Clearly, the intention of the testatrix was that the two large diamonds should go to the two named legatees. The suggested disposition of this particular legacy will more nearly give effect to her intention than would returning the diamonds to the mass of the succession. Therefore, the judgment of the trial court as to this bequest will be reversed and the diamonds will be awarded to Nancy Jean Simms and Mrs. Hough in indivision.
The other two diamonds bequeathed to Mary Louise Simms and Barbara Jane Simms were not mentioned in the descriptive list of the property of the succession. Apparently, they were not among the effects of the deceased at her death and for this reason the bequest lapsed.
4. Collation by Mrs. Hough.
The appellants contend that Mrs. Hough should be required to collate the cost of board, support and education expended by the decedent on Mrs. Hough while she lived with her grandparents as a child.
The trial judge concluded from his study of LSA-C.C. Articles 1242, 1243, 1244 and 1245 and their history as related in Succession of Gomez, 223 La. 859, 67 So.2d 156 (1953), that she was not obligated to do so. We are inclined to agree with his interpretation of these codal articles even though Article 1244, which specifically exempts such donations from collation, seems to be confined to expenditures and gifts by parents to their children. Our view in this respect is buttressed by Civil Code Article 3556(8) which defines the word "children" as including grandchildren and all other descendents in the direct line and Article 229 which provides that ascendants are bound to maintain their needy descendants and vice versa. Be that as it may, we note that there is no evidence in the record to prove just when and in what amounts such donations were made and conclude that appellants have failed to carry the burden of proof required of them in this instance.
5. Identity of the legatees, Irving and Butch Jackson.
In the second paragraph of her will the testatrix states:
" . . . That Carolyn Jane Simms' had been first married to a Mr. Jackson and of that union two (2) children were born, namely, Irving Jackson and "Butch" Jackson. . . ."
She then refers to the two latter persons as her grandchildren and names them among the residuary legatees.
The evidence reflects that Carolyn Jane Simms first husband was named Jacobsen and that she had two children by that marriage named Marvin Willard Jacobsen and Charles Alfred Jacobsen.
Article 1714 of the Louisiana Civil Code provides:
"In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, *280 and to him shall the legacy be decreed."
In other words, the court should resort to extrinsic evidence to determine the identity of an obscure legatee.
The trial judge concluded that the testatrix intended the two Jacobsen children to be the legatees mentioned in her will as Irving and Butch Jackson. He reasoned that the error was plausible, because the testatrix was never really close to these two children of Mrs. Hough and she had not actually written the will herself.
There is no indication that Mrs. Hough was married more than twice or that she had any children whose names resembled Jackson other than the two Jacobsens. Consequently, we agree with the ruling of the trial judge on this point.
6. Willard Simms' Legitime.
Although collation is not required in this case, the provisions of our civil code in regard to the disposable portion of a decedent's property and reduction of donations inter vivos and mortis causa in case of excess are applicable at least as to the claim of Willard Simms for his legitime.[1] Therefore, the trial judge's determination of the value of the property of the succession, including the prior donation to Harold A. Simms, Jr., and the forced portion of Willard Simms must be considered by this Court.
LSA-C.C. Article 1505 provides as follows:
"To determine the reduction to which the donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor's decease, in the state in which it was at the period of the donation.

The sums due by the estate are deducted from this aggregate amount, and the disposable quantum is calculated on the balance, taking into consideration the number of heirs and their qualities of ascendant or descendant, so as to regulate their legitimate portion by the rules above established." (Emphasis added)
The values of the two lots and private park in Flossmore Place Subdivision were stipulated by the parties. There is no dispute in regard to the values of the stock, jewelry, furniture and fixtures, the amount of cash deposited in banks and building and loan associations and the debts and liabilities of the succession as shown on the amended descriptive list. However, the value of the Annex is seriously contested and the value of the 28.51 acre tract of Boskydel that was left to Mrs. Hough is also in dispute.
Two expert real estate appraisers, Maurice Chappuis and Luther George Parker, testified on this subject by deposition. A joint appraisal report of two other experts, Preston J. Babineaux and D. S. Young, was presented by stipulation.
Mr. Chappuis reached two conclusions as to the value of the Annex on June 19, 1970, when Mrs. Florence Simms died. The first was $174,455.00 and was based on its condition as farm land without legal access when donated to Harold A. Simms, Jr. in 1955, but surrounded by subdivisions with improvements and a mall in the area as then existed in 1970. The other 1970 valuation was $136,750.00 and resulted from his consideration of both the Annex and the surrounding lands as they existed in 1955. Mr. Chappuis felt that there was only a slight reduction in value by reason of the landlocked condition of the Annex in 1955.
Mr. Parker appraised the Annex at $262,025.00. This was his opinion of its value on June 19, 1970, but in the same condition as it was when donated in 1955. The fact that *281 there was no legal access to the property in 1955 did not influence this appraiser's conclusion at all.
Messrs. Babineaux and Young appraised the Annex at $37,700.00, this being its value in 1970 in its landlocked condition as in 1955. These appraisers deducted from 50 to 60 per cent of its value because of inaccessability. Although there were no dedicated roads to the property in 1955, Harold A. Simms, Jr., was able to acquire a right-of-way for a public road to the Annex by exchange on December 5, 1955, apparently without a great deal of difficulty. Consequently, it is extremely doubtful that the accessability factor would reduce the value of the property to the extent Messrs. Babineaux and Young thought.
The trial judge accepted the lower appraisal of Mr. Chappuis, $136,750.00, "as being more practical and as being in line with 1505 of the Civil Code". We cannot say that he was clearly wrong in doing so.
We do believe, however, that he was manifestly in error in concluding that the sum of $85,530.00 as set forth in the descriptive list was the value of the 28.51 acre tract of Boskydel bequeathed to Mrs. Hough. Mr. Chappuis appraised this tract at $122,600.00 and Mr. Parker concluded that its value was $99,785.00. Messrs. Babineaux and Young's report does not mention this tract.
Mr. Chappuis' testimony in regard to this property is based on his analysis of comparable sales and seems fair and reasonable. We also note in the brief filed on behalf of Mrs. Hough, who will bear the brunt of any increase in the value of this property, that she believes Mr. Chappuis' approach is sound and his conclusion reasonable and urges us to accept his appraisal. We agree and will do so.
We find the property of the succession and the value thereof to be as follows:

 1. Lot 4 of Flossmore Place Subdivision
 and improvements $ 25,000.00
 2. Lot 14 of Flossmore Place Subdivision 10,000.00
 3. 28.51 acres of Boskydel on the
 east side of East Bayou
 Parkway 122,600.00
 4. Private park in Flossmore Place
 Subdivision 10,000.00
 ___________
 TOTAL IMMOVABLES $167,600.00
 ===========
 5. Stocks $ 15,860.04
 6. Jewelry 2,845.00
 7. Household furniture and fixtures 750.00
 8. Cash in banks and building and
 loan associations 62,609.46
 ___________
 TOTAL MOVABLES $ 82,064.50
 ===========
 RECAPITULATION
 ASSETS:
 Immovables $167,600.00
 Movables 82,064.50
 ___________
 TOTAL ASSETS $249,664.50
 DEBTS AND LIABILITIES 17,735.41
 ___________
 NET ESTATE $231,929.09

In order to determine Willard Simms' legitime, the value of the Annex or the sum of $136,750.00 must be added to the net estate, making the total mass of the succession $368,679.09. Since the testatrix was survived by the descendants of her only two children, the non-disposable portion thereof is one-half or $184,339.55. Being one of two children of a son of the testatrix, Willard Simms' legitime is one-fourth of the non-disposable portion or $46,084.89. This is the total amount to which he is entitled from the succession, subject to payment of his pro rata share of taxes, expenses and court costs.
The testatrix having disposed of all of her property by her last will and testament and the total of such dispositions being in excess of the disposable portion, at least insofar as Willard Simms is concerned, there must be a pro rata reduction of all of her bequests without distinction between the universal and particular dispositions in accordance with LSA-C.C. Article 1511 in order to provide for Willard Simms' legitime. This can be accomplished on remand before delivery is made of Mr. Simms' forced portion and the reduced bequests to the legatees thereof.
For these reasons, the judgment of the district court is amended to reflect that the *282 legitime of Willard H. Simms is $46,084.89, the value of the 28.51 acre tract on the east side of East Parkway Boulevard that was formerly a part of Boskydel is $122,600.00 and the total net value of the property of the succession is $231,929.09; it is reversed insofar as it nullifies the bequest in the testatrix's will of two large diamonds to Nancy Jean Simms and Carolyn Jane Simms and it is now ordered, adjudged and decreed that such diamonds be delivered to these legatees in indivision; but the judgment is otherwise affirmed. This matter is remanded to the district court for further proceedings consistent with the views expressed hereinabove. The costs of this appeal will be assessed to all parties to the suit, pro rata, with the exception of the testamentary executrix, Mrs. Dorothy Simms, and Charles and Marvin Jacobsen.
AMENDED, AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WATSON, J., concurs in part and dissents in part and assigns written reasons.
WATSON, Judge, concurring in part and dissenting in part:
As to the issues involving (a) collation by Simms (b) diamonds (c) Jacobsens and (d) collation by Ms. Hough, I concur with the majority.
However, I disagree with the resolution of the issue of what comprised the bequest of "Boskydel". This, of course, affects the legitime of Willard Simms. The bequest does not, in my opinion, include the entirety of the Beadle farm purchased in 1927. Had the testatrix intended to leave to Ms. Hough all of the property purchased from the Beadles in 1927, she could easily have specified this intention. The description of "Boskydel" is, at best, ambiguous. Civil Code article 1717 provides:
"If it cannot be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least."
It is also well settled that, when there is doubt about the intention of a will, the preferred interpretation is that which is closest to the legal order of distribution. Succession of Montegut, 217 La. 1023, 47 So.2d 898 (1950). Also see Burthe v. Denis, 31 La.Ann. 568 (1879).
Some of the evidence which convinces me that the majority's interpretation of the testatrix's intention as to "Boskydel" is incorrect is the following:
The testimony of Ms. Merlin (Beatrice) Smith was that the name "Boskydel" was used interchangeably to refer both to the house and the house and property together. See her deposition at TR. 159. Ms. Smith also testified at TR. 156 that the old home, which was torn down, was referred to by the decedent as "Boskydel", but the home in Flossmore Place where she died was not referred to as "Boskydel". According to Ms. Smith, the property where she lived at the time of her death was always called Flossmore. In deposition, Merlin C. Smith said he did not know whether the name "Boskydel" referred to the house or the house and property together. (TR. 194). Mr. Smith testified that the testatrix referred to the property on which she resided at her death as Flossmore. (TR. 195).
The reliance on the testimony of Louella Williams and Randolph Briant is misplaced. While they seem to identify the whole farm as "Boskydel" (see Briant at TR. 245), their knowledge is dated and their testimony is inconsistent (see Williams at TR. 586).
Louella Smith Williams saw very little of the testatrix after 1939 and her testimony as to the intention of the 1963 will is not helpful. She also admitted changing her testimony between deposition and trial. (TR. 616). Randolph Briant admitted, in deposition, he was not too familiar with the testatrix in her later years. (TR. 229). The name "Boskydel" had not been mentioned to him since the 1940's, long before the date of the will. (TR. 244).
The executrix of the succession, Dorothy Russell Simms, testified that she had no personal knowledge of what the testatrix meant when she used the word "Boskydel". (TR. 418). However, the executrix testified that the name "Boskydel" could not have been a reference to the entire tract and, in *283 her opinion, the name referred to the farmhouse. She had been familiar with the property since 1931 and had always understood "Boskydel" to refer to the old house. She testified that the old house was still there when Flossmore Place was subdivided and was not incorporated in the subdivision lots to be sold for sentimental reasons. (TR. 441). After Ms. Simms moved across the street into the new house, the old house was rented.
In view of the close relationship between Ms. Hough and her deceased grandmother, the letter from Carolyn Hough to the executrix, Dorothy Simms, at TR. 277 in Vol. 2, (Willard Exhibit A) is significant. Ms. Hough then stated:
"I also told them Lady [the name she used for her grandmother] left me Boskydel, which after Merlin sold those lots, consisted of her home and one lot. . . ."
This letter is inconsistent with the testimony of Ms. Hough at trial. The letter, as a whole, is a clear and businesslike document. Ms. Hough, to whom "Boskydel" was bequeathed, was as likely as anyone to know what her grandmother meant by the term.
Harold Simms' Exhibit No. 4 is significant since it was executed by the decedent in 1956 and shows exactly what property she thought of as "Boskydel". This exhibit and the bequest in the will of the remaining real estate to the grandchildren show conclusively that the testatrix did not intend "Boskydel" to include all of her real estate as the majority concludes.
I do not agree that the bequest of the remaining real estate was merely a legal precaution; the courts are not entitled to ignore a provision of a testator's will on the supposition that it is mere "window-dressing".
The evidence shows that the testatrix used the term "Boskydel" for lot 14, the site of the old farmhouse, which she regarded as the remainder of her "farm", after she moved across the street to her second "Flossmore".
Therefore, I respectfully dissent as to the "Boskydel" issue.
NOTES
[1] Neither Mrs. Hough nor the Jacobsens have appealed or answered the appeal. As a result, the judgment confirming their legacies cannot be amended in their favor. It is obvious from the position taken by appellants, Harold Simms, III, et al, that they have elected to accept their legacies rather than collate the Annex. Consequently, none of these parties have claimed their legitime.