428 So.2d 904 (1983)
In the Matter of the SUCCESSION OF Fred R. LEVY.
No. 82 CA 0507.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
*906 Joseph A. Gladney, Baton Rouge, for plaintiff-appellant Freddie Miles Levy, et al.
Alexis St. Amant, Baton Rouge, for defendant-appellee Gale (Dale) Allen Levy, et al.
Carlos G. Spaht, Baton Rouge, for Thomas Anderson.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment allowing certain illegitimate children who were able to prove filiation to their predeceased father to claim their share of the legitime of their grandfather's succession as forced heirs.
Fred R. Levy died testate on May 18, 1977. He was married only once and then to Susie Dawson Levy, who predeceased him. Of this marriage, only one child was born, Theodore Julius Levy, who died in 1972. Theodore Julius Levy was married but once and then to Willie Mae Callendar Levy. Of this marriage, four children were born, namely, Theodore Julius Levy, Jr., Dale Allen Levy, Debra Ann Levy, and Lori Levy. A judgment of possession in the Succession of Susie Dawson Levy was signed on February 10, 1976, and in that judgment Theodore Julius Levy, Jr., Dale Allen Levy, Debra Ann Levy, and Lori Levy were declared to be her legal heirs.
On September 28, 1981, Thomas Anderson, executor of the Succession of Fred R. Levy, filed a petition and rule asking the court to determine the amount of the forced portion, the identity of the forced heirs, and the proper distribution of the estate. The rule was issued unto the recognized legitimate children of Theodore Julius Levy and also unto Freddie M. Levy, Jerome Daigre, Yvonne Levy Hawkins and Jessie W. Reynolds.
Freddie M. Levy, Jerome Daigre and Yvonne Levy Hawkins are alleged to be acknowledged illegitimate children of Theodore Julius Levy. Jessie Willard Reynolds claims to be an acknowledged illegitimate child of Susie Dawson Levy and as such claims an amount from the Succession of Fred R. Levy owed to him as heir of Susie Dawson Levy. An amended petition prayed that the rule also be issued to Carl Daigre, also an alleged acknowledged illegitimate child of Theodore Julius Levy.
Judgment had been rendered on a prior rule on March 9, 1978, declaring that "the forced heirs of the decedent, Fred R. Levy, are those born during the marriage of his son, Theodore Julius Levy and Willie Mae Callendar which are as follows: Gayle (Dale) Ann Levy, Theodore Julius Levy, Debra Ann Levy and Lori Levy." In November, 1980, Freddie M. Levy, Jerome Daigre, Carl Daigre, and Yvonne Hawkins filed a petition to annul the March 9, 1978 judgment. After the executor had filed the petition and rule in this case on September 28, 1981, a peremptory exception of res judicata was filed by Dale Allen Levy, Theodore Julius Levy, Debra Ann Levy, and Lori Levy excepting to the petition to annul. Exceptors argued that the judgment of March 9, 1978 was final as to these parties.
The trial court found that the exception of res judicata was not applicable to Carl Daigre since he was not a party to the suit in the March 9, 1978 judgment. The court *907 then reasoned that since La.C.C. art. 919[1] was declared unconstitutional by the Louisiana Supreme Court in Succession of Brown, 388 So.2d 1151 (La.1980), and since the heirs under the March 9, 1978 judgment had not been placed in possession of their legitime, it would allow the various parties the right to attempt to establish that they were the acknowledged illegitimate children of Theodore Julius Levy. The court also held that the issue of whether the parties could inherit as acknowledged illegitimates had not been decided in the prior judgment. There is no dispute that Theodore Julius Levy, Jr., Dale Allen Levy, Debra Ann Levy, and Lori Levy are the legitimate children of Theodore Julius Levy and thus may claim as forced heirs their legitime from the succession of his father.[2]
The trial court rejected the demands of Freddie Levy and Jerome Daigre to be declared acknowledged illegitimate children of Theodore Julius Levy, finding that they were conceived during the marriage of their mothers with parties other than Theodore Julius Levy and were thus legitimate children of those marriages. The trial court then declared Carl Daigre and Yvonne Levy Hawkins to be acknowledged illegitimate children of Theodore Julius Levy and thus forced heirs of Fred R. Levy. The value of decedent's estate was determined by the court to be $45,227.60, and the forced portion was determined to be 1/3 of $45,227.60, or $15,075.86. The trial court rejected the reconventional demand of Freddie Levy, Jerome Daigre, Carl Daigre, Yvonne Levy Hawkins and Jessie Willard Reynolds to have an interest in $7,551.55, the sum of money Fred R. Levy obtained from Susie Dawson Levy's succession as usufructary, on the ground that the demand was a collateral attack on a final judgment and an attempted retroactive application of Succession of Brown.
The court also ordered that if the heirs could not agree on a division of the immovable property within 30 days from judgment, the executor was to sell the fixed assets so that a proper distribution to the forced heirs, special legatees, and universal legatees might be made in accordance with decedent's last will and testament.
Appeal was taken by Jerome Daigre, Carl Daigre, Freddie M. Levy, Yvonne Levy Hawkins, and Jessie W. Reynolds with the following assignments of error:
1. The trial court erred in ruling that Succession of Brown cannot be applied retroactively.
2. The trial court erred in finding that Jerome Daigre and Freddie M. Levy could not be acknowledged illegitimate children of Theodore Julius Levy.
3. The trial court erred in not allowing evidence to establish that Jessie W. Reynolds is the acknowledged illegitimate child of Susie Dawson Levy.
4. The trial court erred in not allowing evidence to establish that Freddie M. Levy, Jerome Daigre, Carl Daigre, and Yvonne Levy Hawkins, as acknowledged illegitimate children of Theodore Julius *908 Levy, are the forced heirs of Susie Dawson Levy.
5. The trial court erred in ruling that if the heirs could not agree on the division of the immovable property within thirty (30) days from the date of judgment, the executor must sell all fixed assets so that a proper disbursement can be made.
Appellees, by answer, appealed from various parts of the judgment with the following assignments of error:
1. The trial court erred in finding that the estate of Fred R. Levy was valued at Forty-five Thousand Two Hundred Twenty-seven and 60/100 ($45,227.60) Dollars, and that the forced portion was, therefore, valued at Fifteen Thousand Seventy-five and 86/100 ($15,075.86) Dollars.
2. The trial court erred in ordering a division by licitation of the immovable property within thirty (30) days from the date of the judgment if the parties could not agree to an amicable partition.
3. The trial court erred in sustaining the claims of Carl Daigre and Yvonne Levy Hawkins to be acknowledged illegitimate children of Theodore Julius Levy, and, therefore, forced heirs by representation of Fred R. Levy.
The issues before the court are as follows:
(1) Can the acknowledged illegitimate children of Theodore Julius Levy be recognized as forced heirs of Fred R. Levy?
(2) Did the trial court err in its determination of which illegitimate children of Theodore Julius Levy could be forced heirs of Fred R. Levy?
(3) Did the trial court err in refusing to allow Jessie Willard Reynolds, alleged acknowledged illegitimate child of Susie Dawson Reynolds, to prove his right to the amounts owed to the Succession of Susie Dawson Reynolds?
(4) Did the trial court err in not considering any claims of acknowledged illegitimate children of Theodore Julius Levy to amounts owed to the Succession of Susie Dawson Levy?
(5) Did the trial court err in omitting certain sums from the value of the estate of Fred R. Levy?
(6) Did the trial court err in ordering a division of immovable property within thirty (30) days from the date of judgment if the parties cannot agree to an amicable partition?

ISSUE NO. 1
In Succession of Brown, supra, the Supreme Court sustained a Court of Appeal judgment holding that La.C.C. art. 919 was unconstitutional because it unreasonably discriminated against illegitimate children by denying them the same inheritance rights in the succession of their fathers as were enjoyed by legitimate children. The court based its decision on the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Art. 1, § 3 of the 1974 Louisiana Constitution.[3] Whether the decision in Brown would be applied retroactively was left unanswered until the recent opinion of the Louisiana Supreme Court in Succession of Viola Clivens, on rehearing, 426 So.2d 585 (La.1983), in which the Court held that Succession of Brown, as relates to testate as well as intestate successions, is to be applied retroactively to the effective date of the 1974 Louisiana Constitution, January 1, 1975, as well as prospectively. The Court in the Clivens opinion declared that, "The holding in Brown, insofar as it relied on Article I, Section 3 of the 1974 Constitution, was an acknowledgment of the rights of illegitimates and an expression *909 by the Court that arbitrary discrimination, as is implicit in La.C.C. art. 919, is constitutionally prohibited. Therefore, the purpose and effect of that holding can only be furthered by a retroactive application of the decision to the effective date of the Constitution." The Court noted that this constitutional provision had been relied upon in declaring that other statutes unreasonably discriminated against illegitimates.[4]
On original hearing in Clivens, the Court had held that Succession of Brown would be applied retroactively to co-heirs in intestate successions, and prospectively from the date of its rendition, September 3, 1982, in testate successions and as to third parties. On rehearing, the Court said the following which bears directly on the instant case:
"In our original opinion, we drew a distinction between testate and intestate successions. It was argued on rehearing that such a distinction does not fully rectify the unconstitutional discrimination against illegitimates that has existed. There is, of course, merit in this argument.
Because of the unique nature of Louisiana Succession Law, which Constitutionally requires forced heirship (La. Const. art. XII, § 5), a testator is not free to bequeath all his property to whomever he pleases if he leaves descendants. Descendants have a constitutional, as well as a statutory, right to a forced portion. To deny an illegitimate descendant a forced portion in a testate succession, while affording a legitimate descendant such a right, is as constitutionally impermissible as denying an illegitimate child his right in an intestate succession. There is no basis for making such a distinction and such a holding fosters rather than remedies discrimination against illegitimates."
For the same reasons that led the Court in Clivens to apply Succession of Brown, as it relates to testate as well as intestate successions, retroactively to January 1, 1975, the effective date of the 1974 Louisiana Constitution, this court holds that acknowledged illegitimates, or those who have timely proved their filiation, and who claim as descendants a forced portion of their grandparent's estate may do so when the grandparent died after January 1, 1975, the effective date of the 1974 Louisiana Constitution.[5]
We note that La.C.C. arts. 1493 and 1495, the relevant articles on forced heirship, were amended in 1981.[6] Before amendment, *910 the articles clearly made only legitimate children forced heirs. The omission of any reference to "legitimate" children in the amended articles was undoubtedly intended to bring the articles into conformity with the constitutional principles enunciated in Succession of Brown.
The testator in the instant case, Mr. Fred Levy, died on May 18, 1977. Retroactive application of Succession of Brown and Succession of Clivens to January 1, 1975, allows his illegitimate forced heirs to assert their claims to the legitime.

ISSUE NO. 2
Freddie Levy, Jerome Daigre, Carl Daigre, and Yvonne Levy Hawkins all claim to be acknowledged illegitimate children of Theodore Julius Levy. The trial court allowed the claims of Carl Daigre and Yvonne Levy Hawkins, but denied those of Freddie Levy and Jerome Daigre. Pursuant to the jurisdiction granted to appellate courts in La. Const. art. 5, § 10(B)[7], we will now examine these claims.

CARL DAIGRE AND YVONNE LEVY HAWKINS
Neither of these claimants was formally acknowledged in accordance with La. C.C. art. 203.[8] However, the jurisprudence has long recognized that acknowledgment may take place informally. Cf. Succession of Matte, 346 So.2d 1345 (La.App. 3d Cir. 1977), writ refused 350 So.2d 674 (1977) and cases cited therein. Proof of informal acknowledgment may be made by proving paternal filiation. At the time of trial of the instant case, the following articles were in effect:[9]
Art. 208. Requirement to prove filiation
"In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment *911 under Article 203 must institute a proceeding under Article 209."
(Amended by Acts 1979, No. 607, § 1; Acts 1980, No. 549, § 1, eff. July 23,1980; Acts 1981, No. 720 § 1.)
Art. 209. Proof of filiation
"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
C. The right to bring this proceeding is heritable."
(Amended by Acts 1980, No. 549, § 1, eff. July 23, 1980; Acts 1981, No. 720, § 1.)
The trial court found that Carl Daigre and Yvonne Levy Hawkins had proven that they were acknowledged illegitimate children of Theodore Julius Levy.
An examination of the record reveals the following pertaining to these two claimants:

CARL DAIGRE
Carl was born February 13, 1958. Dorothy Daigre, Carl's mother, testified that she was divorced from her husband, Albert Jones, when Carl was born. She never lived with Theodore. She said, however, that Theodore was Carl's father and that Theodore would come around and play with Carl and give her money for him until she and Theodore stopped seeing each other when Carl was three. After that time, Theodore would take Carl places, like fishing, and to Theodore's mother's home.
Mr. Robert Parker testified that he worked as a barber in Fred Levy's barber shop for many years. He said that Carl would be in the shop on occasion with Theodore and that Theodore would introduce Carl as his son. Numerous other witnesses testified that Theodore acknowledged Carl as his son.
The trial court found the testimony of these witnesses to be credible. The testimony shows that Theodore's acknowledgment of Carl was continuous and that Theodore was generally believed in the community to be Carl's father. Carl has carried his burden of proof by a preponderance of the evidence that Theodore considered him to be his son and acknowledged him as such.

YVONNE LEVY HAWKINS
Mildred Gordon, Yvonne's mother, testified that she had sexual relations with Theodore Levy and that Theodore was the father of Yvonne, who was born April 2,1945. Ms. Gordon testified that Theodore moved her and Yvonne into Theodore's parents' home when Yvonne was very young. Ms. Gordon moved out after a while, but Yvonne stayed and lived with her grandparents until she left to go to California in 1968. Numerous witnesses stated that Theodore said Yvonne was his daughter. Freddie M. Levy stated that Theodore told him that Yvonne was Freddie's sister.
Yvonne has proven by a preponderance of the evidence that she is the acknowledged daughter of Theodore Julius Levy.

FREDDIE M. LEVY AND JEROME DAIGRE
The trial court's conclusions of law relating to Freddie M. Levy and Jerome Daigre present a more serious problem. The issue is whether the presumption of law created in La.C.C. art. 184[10] prohibits a person from establishing filiation to his biological father.
*912 Gladys Miles testified that she married Prentice Rowe in 1950 and that she was still married to Prentice Rowe when Freddie was conceived. She testified that she was divorced prior to Freddie's birth on April 21, 1961, and that Rowe knew of her pregnancy and the birth of Freddie.
Dorothy Daigre testified that she married Albert Jones in Sunshine, La. on January 25, 1949 and gave birth to three children by Albert Jones. She said that she and Albert Jones separated in 1951 or 1952 and that she met Theodore in about 1952, but they never lived together. She testified that she gave birth to Jerome on April 21,1956, that Albert Jones knew of her pregnancy, and that she was divorced from Albert sometime around the time Jerome was born.
As concerns Freddie Levy and Jerome Daigre, in neither of these cases did the husbands of the mothers take action to disavow paternity. The trial judge found that Freddie Levy and Jerome Daigre were legitimate children of the marriage of their mothers to parties other than Theodore Julius Levy and thus could not be the acknowledged illegitimate children of Theodore Julius Levy.
The trend of the jurisprudence, however, is to allow the true parentage of an individual to be established, if such can be accomplished. Succession of Mitchell, 323 So.2d 451 (La.1975); Warren v. Richard, 296 So.2d 813 (La.1974); IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir.1982).
Warren v. Richard, supra, held that, for purposes of a wrongful death action under La.C.C. art. 2315, a child may be the presumed legitimate child of the husband of the mother under La.C.C. art. 184 and the biological child of another man. Succession of Mitchell, supra, held that children presumed to be the legitimate children of the husband of the mother (under La.C.C. art. 184) could be legitimated under La.C.C. art. 198 by the subsequent marriage of the mother to their biological father.
In IMC Exploration Co. v. Henderson, supra, a concursus proceeding was filed to determine royalty ownership of proceeds from wells located on property whose ownership was in question. One group of claimants was Rayvenita Thomas and her mineral assignees who contended that Rayvenita was the illegitimate daughter of Moody Henderson, a son of Martha and Charlie Henderson (record owners of the property) who predeceased his parents, and that as such, Rayvenita was entitled to inherit from the Hendersons by representation. There was no dispute that Rayvenita's mother was married to a man other than Moody Henderson at the time of Rayvenita's conception and birth. Rayvenita's legal father never filed an action to disavow paternity. The presumption of paternity under La.C.C. art. 184 was clearly applicable. The Second Circuit recognized that prior to Warren and Mitchell, Rayvenita would not have been able to prove that she was the biological child of Moody Henderson and that she was not the legitimate child of her mother's husband. The court also recognized that in Warren and Mitchell there was no dispute as to the identity of the biological father, whereas Rayvenita's parentage was vigorously contested. The Court of Appeal allowed Rayvenita to assert her claims, but reversed the trial court's factual findings that she had proven by a preponderance of the evidence that Moody Henderson was her biological father.
At the time of the Henderson case, La.C.C. art. 208 read as follows:
Art. 208.
Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their paternal descent.
The court in Henderson noted in obiter dictum that under the 1981 amendment to article 208 (the same amendment applicable to the instant case), Rayvenita may not have been able to bring her claim since she did enjoy legitimate filiation.[11] The Henderson *913 court was referring to the following language: "... a child who does not enjoy legitimate filiation ... must institute a proceeding under Article 209." (Art. 209 reads, "A child not entitled to legitimate filiation ... must prove filiation by a preponderance of the evidence in a civil proceeding...") However, our interpretation of the language, "a child not entitled to legitimate filiation," is that it refers not to all legitimate children, but to the child not entitled to legitimate filiation to the parent to whom he is attempting to prove filiation. To hold otherwise would deny equal protection to legitimates and place illegitimates in a more favorable legal status than legitimates, in violation of the 14th amendment of the United States Constitution and Article 1, § 3 of the 1974 Louisiana Constitution.
Further, though the articles do require a child who has no legitimate filiation to comply with the procedure set forth therein, there is no language in the articles that prohibits a child who does enjoy legitimate filiation from utilizing the articles.
We also note that article 208 in effect during the Henderson case read, "Illegitimate children ... may be allowed to prove their paternal descent." The Court of Appeal in that case recognized Rayvenita as "legitimate", yet still allowed her to attempt to prove her filiation to her alleged biological father. The language in the article applicable to the instant case must be interpreted more broadly than the language in the prior article to refer not to all legitimate children, but only to children not entitled to legitimate filiation to the parent to whom they are seeking to establish filiation.
For these reasons, we hold the Freddie Levy and Jerome Davis are not prohibited from attempting to establish their filiation to their biological father.[12]
The trial court made no factual finding as to whether, absent the legal impediment, these parties had established by a preponderance of the evidence their filiation to Theodore Julius Levy. The judgment of the court, however, was made after trial at which both claimants had full opportunity to present evidence; therefore, this court has a complete record on which to make a factual conclusion on whether the claimants carried their burden of proof in establishing the paternity of Theodore Julius Levy. We find that both did.
In addition to the facts previously mentioned, the record reveals the following:
Gladys Miles met Theodore Levy around 1958 or 1959. She testified that they lived together as man and wife for about 16 or 17 years and that Freddie was born of that relationship. When Freddie Levy was born on April 21, 1961, Gladys and Theodore were living together in Scotlandville and shortly thereafter moved to the home of Theodore's parents, Fred and Susie Levy. Gladys then moved to New York and Theodore followed, leaving Freddie with his parents. They returned to Baton Rouge after about four years and then Gladys, Theodore, and Freddie lived in a home on Washington Street together for about five years. Freddie moved back to his grandparents' home about 1970. Gladys testified that Theodore sent money to his parents for Freddie while Freddie was living with them. Especially significant are several letters which were written by Theodore to Gladys during a time when Theodore was away. Theodore wrote, "How are you and my little Boy to-day, ..." and "... kiss my little Boy for me," and "... take care of yourself and my little Boy." Many witnesses testified that Theodore acknowledged Freddie as his son.
The preponderance of the evidence clearly shows that Theodore considered Freddie as his son and acknowledged him as such on numerous occasions.
Dorothy Daigre met Theodore Levy in about 1952. Jerome was born April 21, 1956. Dorothy testified that Jerome went to live with Susie and Fred Levy at Theodore's *914 request when Jerome was a year old and while Dorothy was attending to an older son who had been injured and was in the hospital. Mrs. Susie Levy later asked Dorothy if Jerome could live with her permanently; Dorothy agreed, and so Jerome lived in Susie and Fred's home until after Fred's death. Gladys Miles testified that when she and Theodore were living in New York, Theodore sent money and packages to Jerome as well as Freddie. Many witnesses testified that Theodore always considered Jerome to be his son and acknowledged him as such.
For the above reasons, this court affirms the trial court's judgment that found Yvonne Levy Hawkins and Carl Daigre to be acknowledged illegitimate children of Theodore Julius Levy. We reverse the trial court judgment finding that Jerome Daigre and Freddie Levy were prohibited by law from seeking to prove their filiation to Theodore Levy and find that the evidence establishes that they, also, are acknowledged illegitimate children of Theodore Julius Levy.

ISSUES 3 AND 4
The executor of Fred Levy's estate paid to the legitimate heirs of Susie Dawson Levy $7,551.55, the sum of money Fred Levy had obtained from her succession as usufructary. Throughout the trial, Freddie M. Levy, Jerome Daigre, Carl Daigre, and Yvonne Levy Hawkins (as her grandchildren) and Jesse Reynolds (as her son) attempted to establish that they were heirs also of Susie Dawson Levy and thus entitled to share in the above amount.
The trial court found that inasmuch as the proceedings in "Succession of Susie Dawson Levy" were concluded by a judgment of possession on February 10, 1976, it would not allow the parties to collaterally attack that judgment. The court allowed no evidence of heirship to Susie Dawson Levy, and the record does not reveal the date of her death. If her death occurred after January 1, 1975, under Succession of Clivens, these claims should have been considered.
We therefore remand this portion of the case to the trial court to determine the rights of these parties, if any, to the sums owed to the Succession of Susie Dawson Levy under the rationale of Succession of Clivens, supra.

ISSUE NO. 5
Appellees argue that the trial court erred in finding the value of the estate to be $45,227.60 and the forced portion $15,075.86. Appellees contend (1) that the trial court inadvertently omitted some assets, and (2) that if certain claimants are found to be forced heirs, they must collate some previous donations.
(1) Appellees alleged that three certificates of deposit worth a total of $3,168.48 in the name of Fred R. Levy should have been included. They were included in the Detailed Descriptive List and in the Final Account, but were omitted from the rule.
We agree with appellees that the amount of these certificates should be included in the value of the Succession of Fred R. Levy. According to the Final Account, they were all payable to Fred R. Levy, though they were "for" Freddie M. Levy, Jerome Daigre, and Derek Van Lindsey. The addition of this sum to the $45,227.60, brings the total of the estate to $48,396.08 and the forced portion to $16,132.03.
(2) Appellees allege that Yvonne Levy Hawkins received from her grandfather $7,000.00 and four automobiles, and that Jerome Daigre received an automobile worth $1,100.00, all of which should be returned to the succession for collation.
The record reveals that at least three of the automobiles given to Yvonne were given to her while her father, Theodore, was still alive. The law provides that gifts made to a grandchild by a grandparent during the life of the parent are exempt from collation because, while the parent is alive, there is no legitimate portion due to *915 the grandchild in the estate of his grandparent.[13]
As to the remainder of the gifts, the record either does not clearly establish when they were given or does not establish the exact amounts given. Therefore, it is impossible for this court to determine whether collation is required. Appellees have failed to carry the burden of proof required of them in this instance. See In Succession of Simms, 371 So.2d 272 (La. App. 3d Cir.1979), writ denied, 374 So.2d 656 (La.1979).

ISSUE NO. 6
All parties to this litigation urge that the trial court erred in ordering a partition by licitation of the immovable property within thirty (30) days from the date of judgment if the parties could not agree to an amicable partition. No one filed a petition requesting a partition. There is no apparent necessity to sell any property to satisfy legacies in the will, and there is no evidence that the executor requested such a sale. The proper method for partitioning property is set out in La.C.C.P. art. 4601 et seq. The trial court erred in ordering the partition in this case.
For the above reasons, the judgment of the trial court pertaining to the claims of Freddie M. Levy and Jerome Daigre is reversed, and we find them to be forced heirs of Fred R. Levy and thus entitled to their share of the legitime. The part of the judgment ordering a sale of the immovable property is also reversed. The judgment is amended to increase the value of the Succession of Fred R. Levy from $45,227.60 to $48,396.08 and the forced portion from $15,075.86 to $16,132.03. We remand the case, in part, to the trial court to determine the rights of the claimants, if any, in the sums owed to the Succession of Susie Dawson Levy. In all other respects, the judgment is affirmed. All costs of this appeal to be assessed against the Succession of Fred R. Levy.
AFFIRMED IN PART; REVERSED IN PART; AND, REMANDED IN PART.
NOTES
[1] La.C.C. art. 919, before its repeal in 1981, provided:

"Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State.
In all other cases, they can only bring an action against their natural father or his heirs for alimony, the amount of which shall be determined, as directed in the title: Of Father and Child
[2] In his will, Mr. Fred Levy made various dispositions and also bequeathed the forced portion as follows:

"I have been married but once and then unto the late Susie Dawson, and from this marriage was born Theodore J. Levy who died in the year 1972; that Theodore was married but once and then to Willie Mae Callendar, and from this marriage, to my knowledge only two children were born, namely Dale Allen Levy and Theodore Julius Levy, and to these grandchildren, and to any others, if any there should be, I will and bequeath their legitime as my forced heirs."
Debra Ann Levy and Lori Levy were also found to be legitimate children of the marriage of Theodore Julius Levy and Willie Mae Callendar Levy and forced heirs of Fred R. Levy. Their right to be declared forced heirs is not at issue.
[3] La. Const. art. 1, § 3 provides:

§ 3. Right to Individual Dignity
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
[4] Succession of Thompson, 367 So.2d 796 (La. 1979), held that La.C.C. art. 1483, which prohibited an acknowledged illegitimate child from being a legatee of his mother if the mother had other legitimate children, was unconstitutional under art. 1, § 3 of the 1974 Louisiana Constitution.

Succession of Robins, 349 So.2d 276 (La. 1977), held that La.C.C. art. 1488 was unconstitutional under art. 1, § 3 of the 1974 Louisiana Constitution because it prohibited a natural parent from bequeathing any substantial part of his estate to a child (more than was necessary for sustenance or to procure an occupation or profession) if the child's conception resulted from the parent's adultery.
[5] At the time of trial in this case, La.C.C. arts. 208 and 209, as amended by Acts 1981, No. 720, provided the applicable law on proof of filiation. Section 2 of Acts 1981, No. 720 allowed a grace period of one year from the effective date of the act (September 11, 1981) for any persons against whom the time period provided in the act may have accrued, to bring a proceeding to establish filiation. The claims made in the instant suit were timely instituted within this grace period.
[6] Before the 1981 amendments, arts. 1493 and 1495 read as follows:

Art. 1493. Disposable portion when legitimate children survive
"Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent."
Art. 1495. Forced heirs; legitimate children and parents
"In the cases prescribed by the two last preceding articles, the heirs are called forced heirs, because the donor can not deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them."
The articles presently read as follows:
Art. 1493. Disposable portion when children survive
"Donations inter vivos or mortis causa cannot exceed three-fourths of the property of the disposer, if he leaves, at his decease, one child; and one-half, if he leaves two or more children.
Under the name of children are included descendants of whatever degree they may be, it being understood that they are only counted for the child they represent."
(Amended by Acts 1981, No. 884, § 1, eff. Jan. 1, 1982.)
Art. 1495. Forced heirs
"In the case prescribed by the preceding article, the heirs are called forced heirs, because the donor can not deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them."
(Amended by Acts 1981, No. 442 § 2, eff. Jan. 1, 1982.)
[7] La. Const. art. 5, § 10(B) reads as follows:

§ 10. Courts of Appeal: Jurisdiction
(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In criminal cases its appellate jurisdiction extends only to questions of law.
[8] La.C.C. art. 203 provides:

Art. 203. Methods of making acknowledgment
"The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the 1 presence of two witnesses, by the father and mother or either of them, or it may be made in the registering of the birth or baptism of such child." (Footnote omitted)
[9] Article 209 has since been amended to read as follows:

Art. 209. Proof of filiation
"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
C. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
D. The right to bring this proceeding is heritable."
(Amended by Acts 1980, No. 549, § 1; Acts 1981, No. 720, § 1; Acts 1982, No. 527, § 1.)
[10] La.C.C. art. 184 reads as follows:

Art. 184. Presumed paternity of husband
"The husband of the mother is presumed to be the father of all children born or conceived during the marriage."
(Amended by Acts 1976, No. 430, § 1.)
[11] The Henderson court said:

"We note in passing that under the new Article 208, since Rayvenita Thomas enjoys legitimate filiation, she might well, under the intent of the present law, be precluded from asserting her claim as an illegitimate."
[12] For a contrary view, see Developments in the Law, 1980-1981Persons, 42 La.L.Rev. 403 (1982).
[13] La.C.C. art. 1239 reads as follows:

Art. 1239. Grandchildren; right to donations made by grandparent during life of parent
"But gifts made or legacies left to a grandchild by his grandfather or grandmother during the life of his father, are always reputed to be exempt from collation, because, while the father is alive, there is no legitimate portion due to the grandchild in the estate of his grandfather.
The father, inheriting from the grandfather, is not liable to collate the gifts or legacies left to his child."